81 A.3d 516

**Gregory James GRAVES**

v.

**STATE of Maryland.**

**No. 2832, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Dec. 18, 2013.

Paresh Patel (James Wyda, Federal Public Defender, on the brief), Greenbelt, MD, for Appellant.

Edward J. Kelley (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: DEBORAH S. EYLER, GRAEFF, and HOTTEN, JJ.

GRAEFF, J.

On March 10, 1998, Gregory Graves, appellant, pleaded guilty in the Circuit Court for Prince George's County to one count of robbery with a deadly weapon, Case Number 97–1476B, and two counts of use of a handgun in the commission of a felony or crime of violence, Case Numbers 97–1468B and 97–1477B. The court sentenced appellant to concurrent 20 year terms for each count, with all but five years suspended, followed by five years of probation.

On October 26, 2011, appellant filed a Petition for Writ of Error Coram Nobis, alleging that the convictions subjected him to a potentially greater sentence in pending federal court charges. The circuit court granted appellant's petition with respect to the robbery conviction and his handgun conviction in Case Number 97–1477B. It denied, however, his petition with respect to the handgun conviction in Case Number 97–1468B.

On appeal from the denial of his petition with respect to Case Number 97–1468B, appellant presents three questions for our review,[1] which we have reordered, reworded, and

---

1. Appellant's original questions presented are as follows:
   1. Were [appellant's] guilty pleas involuntary because the convicting court failed to apprise him of the nature of the charges and the elements of the offenses to which he was pleading guilty?
   2. Were [appellant's] guilty pleas involuntary because the convicting court failed to apprise him of his right to a jury trial and the

consolidated into the following questions [2]:

1. Did the circuit court err in finding that appellant waived his right to coram nobis relief?

2. Did the circuit court err in denying appellant's petition for writ of error coram nobis because his guilty plea was involuntary?

For the reasons set forth below, we answer both questions in the affirmative, and therefore, we shall reverse the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

At the March 10, 1998, plea hearing, appellant and his co-defendant, Jeffery McDowney, pleaded guilty to several charges involving robberies of restaurants in Prince George's County. Mr. McDowney entered his pleas prior to appellant.

With respect to Case Number 97–1468,[3] the conviction at issue here, which involved a robbery of a Little Caesar's Pizza restaurant, the prosecutor read the following facts that would have been adduced at trial:

[T]he evidence would show that on June 15th, 1997 approximately 2055 hours Mr. McDowney and co-defendant Mr. Graves entered Little Caesar's Pizza restaurant on Silver

---

corollary rights associated with such trial, along with the presumption of innocence, the State's burden of proof, and the standard of proof?

3. Were [appellant's] guilt pleas involuntary because the facts presented to the convicting court were insufficient to establish his guilt of the charged offenses?

4. Did the court below err in finding that [appellant] waived his right to pursue coram nobis relief?

**2.** Appellant's questions presented and his argument headings address the validity of his guilty pleas, plural. Only one conviction is at issue, however, appellant's plea to the use of a handgun in the commission of a felony or crime of violence, Case Number 97–1468B. As discussed, the circuit court granted appellant's petition for coram nobis relief on the other two convictions and vacated those convictions.

**3.** Mr. McDowney was defendant "A" in case 97–1468, and appellant was defendant "B."

Hill Road, Suitland, Prince George's County, Maryland. Mr. McDowney threatened to smack one of the employees in the face with a gun if she didn't shut up.

The witness ran to the back of the establishment to call 911. The defendant Mr. McDowney displayed the handgun, and demanded funds from a Tekia Govan. The co-worker Mr. Reid was told to open the register, and he complied. And Mr. McDowney and Mr. Graves fled with fifty-five dollars in U.S. currency from the restaurant located at the aforesaid address[.]

In that case the State would call Vincent Reid and co-employee Tekia Govan, Alphonso Hayes, and Terrell Jones of the Prince George's County Police Department.

After the prosecutor read the facts underlying the co-defendant's and appellant's additional pleas, which are not at issue here, the court accepted Mr. McDowney's pleas and sentenced him.

Immediately thereafter, the court began its plea colloquy with appellant. The court asked appellant: "Now, you were here when [the prosecutor] was reading off all the facts of those different individual robberies. Did you hear what he said?" Appellant responded in the affirmative. Appellant also agreed that he had "talked this matter over" with his attorney, that his attorney had answered all his questions about the case, that he had "read over the sheet that talks about your rights that [he] would have had, had [he] gone to trial," and that he understood those rights and he was giving them up.

Appellant's attorney then informed the court that appellant would

enter pleas in case 97–1468B, Count 2, the handgun charge, 20 years, suspend all but 5. As to case 97–1477B, Count number 2, 20 years, suspend all but 5, another handgun charge. And as to case 97–1476B, 20 years suspend all but 5. Five years probation, and all the pleas are to run concurrently.

Appellant acknowledged that he understood the agreement he was making, that he was making the plea because he "really [was] guilty of the[ ] charges," and that no one made any

promises or forced him to enter his plea. The court determined that there was "a factual basis on which to accept the plea, and the plea [was] freely, voluntarily, understandingly made." It then accepted the plea and sentenced appellant to concurrent 20 year terms for each count, with all but five years suspended, followed by five years of probation.

On October 26, 2011, appellant filed a Petition for Writ of Error Coram Nobis, requesting that the court vacate his convictions on all three counts. He argued that the pleas must be vacated for three reasons: (1) "in the plea colloquy, there [wa]s no mention of the elements of the charges, no description of the nature of the charges," and "no mention that [appellant] and his attorney discussed the nature or elements of the charges"; (2) "the court failed to examine [him] on the record that he understood his rights under *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and as required under Maryland Rule 4–242(c)(1);" and (3) the statements of facts proffered by the State was insufficient as a matter of law to find him guilty of the charges.

Appellant filed a declaration asserting that, before he entered his pleas, his attorney did not review with him the elements of the offenses and did not explain his appellate rights. He stated that he did not understand "that it was the responsibility of the judge and my attorney to make sure I understood these things." He contended that, had his attorney "advised [him] that there was not a sufficient factual basis to prove the elements of the charged crimes, [he] would not have accepted the plea offer and pleaded guilty."

Appellant stated that he was facing significant collateral consequences as a result of his conviction, asserting that he was scheduled to go to trial the next week in the United States District Court for the District of Maryland on robbery charges. He asserted that, if his state convictions were "not vacated, they will dramatically increase his federal sentence." [4]

---

4. He asserted that the state convictions would: (1) subject him "to mandatory life imprisonment under 18 U.S.C. § 3559(c), the federal

On December 7, 2011, the State filed its Response in Opposition to Writ of Error Coram Nobis. It argued that coram nobis relief was unavailable to appellant because he waived his right to seek such relief by failing to file an application for leave to appeal the judgments of conviction. On the merits, the State asserted: "[T]he record more than adequately shows that, based on the totality of the circumstances, [appellant's] plea was entered voluntarily and intelligently, with an understanding of his trial rights."

On January 6, 2012, the court held a hearing on appellant's petition. At the outset of the hearing, the State conceded that coram nobis relief was warranted for two of the convictions. With respect to Case Number 97–1476B, the prosecutor agreed that the record did not indicate the charge to which appellant was pleading. With respect to Case Number 97–1477B, the prosecutor acknowledged that appellant pled guilty to a handgun charge, but the facts in the record indicated that appellant had used a knife in the robbery associated with that charge.[5] Based on these admitted deficiencies, the court granted appellant's petition relating to those convictions, Case Numbers 97–1476B and 97–1477B, vacating the convictions and ordering a new trial.

With respect to Case Number 97–1468B, appellant's counsel argued that there was "nothing on the record to reflect the specific offense" to which appellant pleaded guilty, and there was nothing to indicate that appellant understood the nature of the offense, which was described at the hearing only as a handgun charge. Counsel also asserted that the factual basis

'three-strikes' statute"; (2) increase the mandatory minimum sentence he faced to 15 years, with a maximum of life, as opposed to a maximum of ten years; and (3) contribute to his status as a "career offender" under the United States Sentencing Guidelines, such that, even if he "is not subject to a mandatory life term," he would face "an advisory sentence of 30 years to life," as opposed to a recommended sentence of 154–171 months as a non-career offender.

5. As indicated, *supra*, the robbery underlying Case Number 97–1477B occurred at a Subway sandwich shop, and was a separate incident from the robbery which gave rise to Case Number 97–1468B, at issue here.

offered by the State in support of the charge was inadequate, as the facts "merely reflect[ed] that [he] was present" during the robbery and "almost all the facts concern what the co-defendant Mr. McDowney did."

The State responded: "[U]nfortunately this is a case where trial counsel only put on the record that [appellant] was pleading to the handgun charge," and "the State is not in a good position to argue that on the record [appellant] was advised of the nature and elements of the offenses as required" under Maryland law. The State argued, however, that it was "hanging [its] hat on" the argument that appellant waived his right to coram nobis relief by not filing an application for leave to appeal from his guilty plea. Regarding the sufficiency of the statement of facts, the State argued that appellant's act of "entering the establishment while the co-defendant committed the crime and then fleeing with the co-defendant and the money is sufficient."

Appellant's trial counsel testified at the coram nobis hearing that, prior to the guilty plea on March 10, 1998, he discussed with appellant the elements of the crime of use of a handgun during the commission of a crime of violence. He stated that, after the plea was entered, appellant did not indicate that he wanted to appeal the plea, as "[h]e seemed very happy with the terms."

At the conclusion of the hearing, the court denied appellant's petition for coram nobis relief with respect to Case Number 97–1468B for the following reasons: (1) the trial court "explicitly determine[d] that there was a factual basis on which to accept the plea"; (2) the plea was "freely, voluntarily, and understandingly made"; and (3) appellant waived his right to pursue coram nobis relief because he did not file an application for leave to appeal his convictions within thirty days of his sentence. With respect to the references by appellant's attorney and the court to Case Number 97–1468B as the "handgun" charge or use of a handgun charge, the court found that, although appellant's claim was waived, this reference was adequate, noting: "There is reference to a

▮▮▮▮▮▮▮▮▮▮▮▮

handgun .... *to use of a handgun. As I indicated, the only* handgun charge is use of a handgun."

This timely appeal followed.

## DISCUSSION

▮▮▮▮▮ The writ of coram nobis is a collateral challenge to a criminal conviction, an " 'extraordinary remedy' " that is justified " 'only under circumstances compelling such action to achieve justice.' " *Skok v. State,* 361 Md. 52, 72, 760 A.2d 647 (2000) (quoting *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954)). It is a "remedy for a convicted person who is not incarcerated and not on parole or probation." *Id.* at 78, 760 A.2d 647. To be eligible for coram nobis relief, several requirements must be met: (1) "the grounds for challenging the criminal conviction must be of a constitutional, jurisdictional or fundamental character," *id.* at 78, 760 A.2d 647; (2) the "coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction," *id.* at 79, 760 A.2d 647; (3) the claim for which coram nobis relief is sought cannot be waived or finally litigated, *id.;* and (4) the petitioner must show prejudice. *Miller v. State,* 196 Md.App. 658, 681, 11 A.3d 340 (2010), *vacated on other grounds,* 423 Md. 474, 32 A.3d 1 (2011).

In the present case, appellant raises a constitutional challenge to his guilty plea, which he contends entitles him to coram nobis relief. Specifically, he argues that his plea was involuntary for three reasons: (1) "the convicting court failed to apprise him of the nature of the charges and the elements of the offenses to which he was pleading guilty"; (2) "the court failed to apprise him of his right to a jury trial and the corollary rights associated with such trial"; and (3) "the facts presented to the court were insufficient to establish his guilt of the charged offense."

The State argues that the circuit court properly denied the petition for coram nobis. Initially, it contends that the court properly found that appellant waived his right to coram nobis "by not filing an application for leave to appeal the entry of his

plea and sentence and by not pursuing post conviction relief." [6]
On the merits, the State argues that appellant failed to meet
his burden of establishing that he was entitled to coram nobis
relief because: (1) he "failed to establish that he was suffering
significant collateral consequences from his conviction"; and
(2) he "failed to establish a defect in his plea."

## I.

### Waiver

We begin with the issue of waiver. The State argues
that the circuit court properly found that appellant waived his
right to challenge his conviction because he failed to file an
application for leave to appeal his guilty plea. Appellant
contends that he did not waive his right to coram nobis relief,
noting that, subsequent to the hearing in this case, the Gener-
al Assembly enacted legislation providing that a failure to seek
an appeal does not waive the right to seek coram nobis relief.

At the time of the hearing in this case, *Holmes v. State*, 401
Md. 429, 445–46, 932 A.2d 698 (2007), was the prevailing law
on the issue of waiver. In that case, the Court of Appeals
held:

[I]f an individual who pleads guilty, having been informed of
his right to file an application for leave to appeal from his
conviction and sentence, does not file such an application for
leave to appeal, a rebuttable presumption arises that he has
waived the right to challenge his conviction in a subsequent

---

**6.** The State also contends that, due to appellant's 13–year delay in
seeking to set aside his guilty plea, his claim is barred by the doctrine of
laches. *See Moguel v. State*, 184 Md.App. 465, 471, 478, 966 A.2d 963
(2009) ("the doctrine of laches is a defense to a petition for writ of error
coram nobis" if there was an unreasonable delay in the assertion of
rights, and the delay results in prejudice to the State). The State,
however, did not raise this issue below, and there is no evidence
showing how the State was prejudiced, such as a loss of witnesses or
evidence. Accordingly, we will not address this issue. *See Leake v.
Johnson*, 204 Md.App. 387, 406, 40 A.3d 1127 (2012) ("Ordinarily, an
appellate court will not decide an issue 'unless it plainly appears by the
record to have been raised in or decided by the trial court.' ") (quoting
*General Motors Corp. v. Seay*, 388 Md. 341, 362, 879 A.2d 1049 (2005)).

coram nobis proceeding, and defendant's right to challenge his conviction and sentence through a petition for writ of coram nobis was waived.

In an apparent reaction to *Holmes,* the Maryland General Assembly enacted Maryland Code (2013 Supp.) § 8–401 of the Criminal Procedure Article ("CP"), which provides as follows: "The failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis." [7] The State contends, however, that this statute does not apply to this case because it went into effect October 1, 2012, after the circuit court issued its decision.

Whether "a statute operates retrospectively, or prospectively only, ordinarily is one of legislative intent." *Langston v. Riffe,* 359 Md. 396, 406, 754 A.2d 389 (2000) (quoting *Spielman v. State,* 298 Md. 602, 607, 471 A.2d 730 (1984)). In determining this intent, "[s]tatutes are presumed to operate prospectively; consequently, absent manifest legislative intent to the contrary, statutes may not be given retrospective or retroactive application." *Gregg v. State,* 409 Md. 698, 714, 976 A.2d 999 (2009). The Court of Appeals has explained, however, that there are "exceptions to the presumption that legislation is to be applied prospectively." *Gregg,* 409 Md. at 714, 976 A.2d 999. For example, " 'a statute effecting a change in procedure only, and not in substantive rights, ordinarily applies to all actions whether accrued, pending or future, unless a contrary intention is expressed.' " *Id.* at 714–15, 976 A.2d

---

7. The bill file for House Bill 1418, which became CP § 8–401, contains a letter from an attorney to Joseph Vallario, Esq., the Chairman of the House Judiciary Committee, relating to the need for a legislative enactment to modify the effect of *Holmes v. State,* 401 Md. 429, 445–46, 932 A.2d 698 (2007), asserting that the "pernicious decision" in *Holmes* "must be undone." Letter from George Harper to the Chairman of the House Judiciary Committee (Jan. 29, 2012). The attorney asserted: "All that is necessary to vitiate [*Holmes* ] is to legislate the following: 'The failure to petition for leave to file an appeal shall not be construed as a waiver of the right to file a petition for writ of error coram nobis.' " *Id.* (Emphasis omitted). This language is very similar to the language contained in CP § 8–401.

999 (quoting *Mason v. State*, 309 Md. 215, 219–20, 522 A.2d 1344 (1987)). Another exception to the general principal that statutes apply prospectively are "[l]egislative enactments that have remedial effect and do not impair vested rights." *Id.* at 715, 976 A.2d 999. Remedial statutes generally are those that " 'provide a remedy or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries.' " *Id.* (quoting *Langston*, 359 Md. at 408, 754 A.2d 389).

In *Gregg*, 409 Md. at 715, 976 A.2d 999, the Court of Appeals addressed whether an amendment to CP § 8–201, which permits the filing of a petition for post-conviction DNA testing, should be given retrospective effect. *Id.* The Court noted that the amendment "prescribes the standard by which the court assesses a petitioner's entitlement to post[-]conviction DNA testing and it improves the existing remedy by making it easier for qualifying petitioners to establish entitlement to such testing." *Id.* Accordingly, it held that the statute was "procedural in nature" and "also a remedial statute, as its purpose is to provide a remedy for persons convicted of serious crimes of which they are actually innocent." *Id.Accord State v. Matthews*, 415 Md. 286, 296, 999 A.2d 1050 (2010) (CP § 8–301, creating a Petition for Writ of Actual Innocence, is both procedural in nature and remedial and may be applied retroactively); *Thompson v. State*, 411 Md. 664, 680, 985 A.2d 32 (2009) (right to appeal in CP § 8–201(k)(6) was remedial in nature because it allowed defendants "to reach the substantive issue of guilt by lowering the bar to obtaining a new trial and according greater access to this Court").

Similarly, here, CP § 8–401 is both procedural and remedial in nature. As indicated, it appears to have been a "remedy" to the holding in *Holmes*, and it removes a procedural impediment to a coram nobis claim of error. *See Langston*, 359 Md. at 419, 754 A.2d 389 (legislation that alters only "the procedural machinery involved in the enforcement" of substantive

rights will operate retroactively).[8]  Accordingly, we hold that CP § 8–401 operates retroactively and appellant did not waive his right to seek coram nobis relief by failing to challenge his guilty plea in an application for leave to appeal.

The State argues, however, that "even if Section 8–401 applied retroactively to [appellant's] case, the waiver ruling of the coram nobis court in this case should still prevail."  Specifically, it contends that CP § 8–401 "applies only to situations where a finding of waiver was founded solely on a defendant's failure to file a direct appeal," and here, appellant also failed to move to withdraw his plea or seek relief pursuant to the Uniform Post Conviction Procedure Act during the time he was incarcerated.  In support of this argument, the State cites to the Court of Appeals decision in *Skok*, 361 Md. at 79, 760 A.2d 647, for the proposition that "[b]asic principles of waiver are applicable to issues raised in coram nobis proceedings," such that the same body of law governing waiver in the Maryland Post Conviction Procedure Act context is applicable in coram nobis proceedings.

The State raises this issue for the first time on appeal; it failed to raise this argument before the circuit court.  Accordingly, it is not properly before us.  *See* Md. Rule 8–131(a) (An appellate court ordinarily will not decide an issue "unless it plainly appears by the record to have been raised in or decided by the trial court.").[9]

---

8.  The State's sole argument in support of its assertion that the General Assembly intended this statute to apply prospectively only is the Editor's Note to the statute, which states that "the act shall take effect October 1, 2012."  We are not persuaded.  As appellant notes, almost every statute has an effective date.  The State points to no legislative history or precedent to support its contention that the legislature intended that the statute, which we have held to be both procedural and remedial in nature, would not apply retroactively.

9.  Even if the issue was preserved for review, the State does not explain how appellant's failure to raise his claim in a post-conviction proceeding precludes his present coram nobis action, nor does it cite any Maryland case that so holds.  We note that CP § 7–106, on which the State relies, provides that an error is waived when a petitioner "could have made but intelligently and knowingly failed to make the allega-

## II.

### Collateral Consequences

█ The State next contends that the circuit court properly denied appellant coram nobis relief because he "failed to establish that he was suffering significant collateral consequences from his conviction." Specifically, it argues that the collateral consequence alleged by appellant was the prospect of enhanced sentencing on his federal charges, but "at the time [his] petition was filed, heard, and decided by the circuit court, [appellant] had not been tried on the federal criminal charges." Accordingly, it asserts, at the time appellant filed his petition, "the significant collateral consequences he alleged below were speculative if not illusory." [10]

█ As this Court recently explained, "in order to be entitled to *coram nobis* relief, the petitioner must prove that he or she is 'suffering or facing significant collateral consequences from the conviction' from which he seeks relief." *Gross v. State*, 186 Md.App. 320, 332, 973 A.2d 895, *cert. denied*, 410 Md. 560, 979 A.2d 708 (2009). The collateral consequences must be actual, not merely theoretical. *See Parker v. State*, 160 Md.App. 672, 687–89, 866 A.2d 885 (2005) (remanding case to circuit court to determine if convictions affected length of subsequent federal sentence).

If the State wants to raise the lack of proof of collateral consequences as a defense to a coram nobis petition, however, it must raise this issue in the circuit court. In *Gross*, 186 Md.App. at 332–33, 973 A.2d 895, we confronted a similar scenario, where Mr. Gross contended that the state conviction subjected him to a longer federal sentence, and the State

---

tion" "in a prior petition under this subtitle" or "in any other proceeding that the petitioner began." CP § 7–106(b)(1)(i). Here, there was no prior petition or "other proceeding that [appellant] began."

**10.** In his brief to this Court, appellant asserts that, on June 8, 2012, he was "convicted in the U.S. District Court of the four offenses with which he had been charged in April 2010," and he was sentenced to 30 years, followed by five years supervised release.

argued that Mr. Gross failed to prove this, merely alleging such consequences in his brief, as opposed to proving them at the hearing. We held that, although "the State's argument might well have been grounds for an affirmance," it was not properly before us because it was neither raised nor decided below. *Id.* at 333, 973 A.2d 895. We noted that, "if the issue had been raised in the circuit court there is a good chance that the *coram nobis* [c]ourt would have granted Gross permission to reopen." *Id.* Because the issue was not raised, we held that the State's argument was waived for appellate review.

Similarly, here, the State failed to raise below its present contention regarding appellant's failure to establish collateral consequences of his conviction. Thus, as in *Gross*, we decline to address this argument.

## III.

### Alleged Defects in Appellant's Plea

At this point, we turn to the merits of appellant's claim. As indicated, to be eligible for coram nobis relief, a petitioner must raise a ground "of a constitutional, jurisdictional or fundamental character." *Skok*, 361 Md. at 78, 760 A.2d 647. Appellant's challenge, that his guilty plea was involuntary, clearly is an issue that may be raised in a coram nobis petition. *Id.* at 80–81, 760 A.2d 647 ("[T]he scope of a coram nobis proceeding encompasses issues concerning the voluntariness of a guilty or nolo contendere plea, and whether the record shows that such plea was understandingly and voluntarily made under the principles of *Boykin*, [395 U.S. at 242, 89 S.Ct. 1709].").[11]

---

11. At the time of appellant's conviction in 1998, Maryland Rule 4–242(c) provided, in pertinent part, as follows:

(c) *Plea of guilty.* The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual

■■■ Appellant contends that his plea was involuntary for three reasons: (1) the court failed to apprise him of the nature of the charge and the elements of the offense to which he was pleading guilty; (2) the court failed to apprise him of his right to a jury trial, and related rights; and (3) the facts were insufficient to establish his guilt for the charged offense. As discussed below, we agree with the first argument and hold that appellant established that his plea was involuntary based on the court's failure to advise him of the elements of the charge of use of a handgun in the commission of a felony or crime of violence. Based on that holding, we need not address the other two issues.

In *Henderson v. Morgan,* 426 U.S. 637, 644–45, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the Supreme Court held that a guilty plea is not "voluntary in the sense that it constituted an intelligent admission that [the defendant] committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Id.* at 645, 96 S.Ct. 2253 (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941)). "Real notice" gives a defendant "an understanding of the law in relation to the facts." *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

In *State v. Priet,* 289 Md. 267, 288, 424 A.2d 349 (1981), the Court of Appeals held that an understanding of the nature of the offense requires "a basic understanding of its essential substance, rather than of the specific legal components of the offense to which the plea is tendered." The Court explained:

The nature of some crimes is readily understandable from the crime itself. Necessarily, the required determination can only be made on a case-by-case basis, taking into account the relevant circumstances in their totality as disclosed by the record, including, among other factors, the complexity of the charge, the personal characteristics of the

basis for the plea. The court may accept the plea of guilty even though the defendant does not admit guilt.

accused, and the factual basis proffered to support the court's acceptance of the plea.

*Id.* The test "is whether, considering the record as a whole, the trial judge could fairly determine that the defendant understood the nature of the charge to which he pleaded guilty." *Id.* at 291, 424 A.2d 349.

In *Bradshaw v. Stumpf,* 545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005), the Supreme Court again addressed the issue of the voluntariness of a guilty plea. The Court reiterated that, "[w]here a defendant pleads guilty to a crime without having been informed of the crime's elements ... the plea is invalid." *Id.* at 183, 125 S.Ct. 2398. It stated, however, that: "Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." *Id.*

Following *Bradshaw,* this Court made clear that, without express assurance on the record, a court cannot presume that "defense counsel has sufficiently explained to the defendant the nature of the offense to which he or she is entering a guilty plea." *Abrams v. State,* 176 Md.App. 600, 622–23, 933 A.2d 887 (2007). We explained that "the trial judge must either (1) explain to the defendant on the record the nature of the charge and the elements of the crime, or (2) obtain on the record a representation by defense counsel that the defendant has been 'properly informed of the nature and elements of the charge to which he [or she] is pleading guilty.' " *Id.* at 623, 933 A.2d 887 (quoting *Bradshaw,* 545 U.S. at 183, 125 S.Ct. 2398). *Accord Miller v. State,* 185 Md.App. 293, 295, 307, 309, 970 A.2d 332 (Where "defense counsel did not represent that he had explained the nature and elements of the crime to the appellant," and neither the judge, defense counsel, or the prosecutor explained on the record the nature and elements of first-degree burglary, Mr. Miller's statement that he understood the plea agreement "was not tantamount to acknowledging that he understood the nature and elements of first-degree burglary."), *cert. denied,* 410 Md. 166, 978 A.2d 246 (2009).

More recently, in *State v. Daughtry*, 419 Md. 35, 42, 18 A.3d 60 (2011), the Court of Appeals stated that

allowing a trial court, in ensuring that a guilty plea is knowing, voluntary, and entered intelligently, to rely essentially on nothing more than a presumption that "in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of ... what he is being asked to admit" runs contrary to Rule 4–242's requirement that there be an adequate examination "on the record in open court."

In that case, the Court noted that "the only portion of the plea colloquy" that related to "ascertaining whether the plea was knowing and voluntary was Daughtry's affirmative response to the trial judge's question, 'Have you talked over your plea with your lawyer?' " *Id.* at 70, 18 A.3d 60. The Court held that, "where the record reflects nothing more than the fact that a defendant is represented by counsel (as in the present case) and that the defendant discussed generically the plea with his or her attorney, such a plea colloquy is deficient under Rule 4–242(c), and the plea must be vacated." *Id.* at 71, 18 A.3d 60. The Court stated that its holding applied retrospectively, noting that it did not announce a new rule because "[t]he law of this State with respect to the voluntariness of guilty pleas has been the same over the past thirty years since we decided *Priet.*" *Id.* at 79, 81, 18 A.3d 60.

Applying this law to the present case, it is clear that appellant's guilty plea to the charge of use of a handgun in the commission of a felony or a crime of violence was not voluntary.[12] Here, as in *Daughtry*, the only portion of the plea colloquy that related to whether the plea was knowing and voluntary was appellant's affirmative response to the court's

---

12. At the time of appellant's conviction, Maryland Code Article 27, Section 36(B) (1998 Supp.), provided, in pertinent part, that "[a]ny person who shall use a handgun ... capable of being concealed on the person in the commission of any felony or any crime of violence as defined in § 441 of this article shall be guilty of a separate misdemeanor." Section 441(e) defined "crime of violence" to include sixteen different offenses, including robbery and robbery with a deadly weapon.

inquiry whether appellant had "talked this matter over with [his] attorney." Neither the court, the prosecutor, nor appellant's attorney stated on the record the nature and elements of the crime of use of a handgun in a felony or crime of violence. Defense counsel did not indicate at the plea hearing that he had explained the nature and elements of the crime to the appellant, and the appellant did not represent that he understood the charge.[13]

Under these circumstances, the prosecutor at the coram nobis hearing acknowledged that "this is a case where trial counsel only put on the record that [appellant] was pleading to a handgun charge," and therefore, the State was "not in a good position to argue that on the record [appellant] was advised of the nature and elements of the offenses as required." On appeal, however, the State argues that "[t]he plea record establishes that [appellant] fully understood that he was pleading guilty to the crime of using a handgun in the commission of a felony or crime of violence" because the crime is "readily understandable from the label of the crime itself." This contention is without merit for two reasons.

Initially, the Court of Appeals has indicated that the crime is not "readily understandable." In *Daughtry*, 419 Md. at 74, n. 20, 18 A.3d 60 the Court stated:

> Although the phrase 'use of a handgun in the commission of a crime of violence' appears readily understandable from the charge itself . . . where one is charged specifically with the "use of a handgun in the commission of a felony," such a

---

**13.** As the State notes, appellant's counsel testified at the coram nobis hearing that he recalled going over the elements of each charge with appellant. This testimony, however, does not change the fact that, at appellant's plea hearing, neither appellant nor his counsel made a statement on the record indicating that such a discussion of the elements of the crime had occurred. *See State v. Daughtry*, 419 Md. 35, 80, n. 31, 18 A.3d 60 (2011) (Because the emphasis of an appellate court "must be on what 'the trial judge could fairly determine' at a defendant's guilty-plea hearing in determining whether a defendant understood the nature of the charge to which he pleaded guilty," we "look only to 'the record as a whole' that was before the trial judge during that proceeding.").

charge is not readily understandable from the charge itself, as we think the average citizen does not know what crimes are considered felonies versus misdemeanors.

Moreover, the record of the plea hearing in this case indicates that the full name of the crime was not even mentioned. The court and appellant's counsel referred to the charge merely as "the handgun charge," "the handgun one[ ]," or simply "the handgun." Thus, even if there was merit to the argument that the elements of the offense were "readily understandable from the label of the crime itself," this label was not even used during the plea colloquy.

Under these circumstances, the record does not reflect that appellant understood the nature and elements of the crime to which he entered his plea. Accordingly, we hold that appellant's plea was not knowing and voluntary, and the circuit court erred in denying appellant's petition for writ of error coram nobis, and appellant's plea must be vacated.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**