REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 104

September Term, 2012

ORLANDO RAY COLEMAN

v.

STATE OF MARYLAND

Krauser, C.J.
Meredith,
Thieme, Raymond G., Jr.
  (Retired, Specially Assigned)

JJ.

Opinion by Krauser, C.J.

Filed: October 1, 2014

In 1999, Orlando Ray Coleman, appellant, pleaded guilty, in the Circuit Court for Anne Arundel County, to possession with intent to distribute cocaine. That court accepted the plea, found Coleman guilty, and sentenced him to a term of five years' imprisonment, with all but ten days suspended, to be followed by a period of five years of supervised probation. Twelve years later, Coleman filed a petition for writ of error coram nobis in the circuit court. In that petition, he asserted, for the first time, that his 1999 guilty plea was defective because, when he entered the plea, he was not advised of the maximum sentence he was facing or of the nature or elements of possession with intent to distribute. The denial of that petition by the Anne Arundel circuit court prompted this appeal.

## BACKGROUND

### *1998 - 1999 Proceedings*

In February 1998, Coleman was arrested and charged with possession with intent to distribute a controlled dangerous substance (crack cocaine), possession of a controlled dangerous substance (crack cocaine), and with resisting arrest. That same month, the Commissioner filed a report with the District Court of Maryland for Anne Arundel County certifying that, when Coleman appeared for his initial appearance, the Commissioner informed him "of each offense with which he [was] charged and of the allowable penalties, including mandatory penalties, if any."

In April 1998, the case was transferred from the District Court to the Circuit Court for Anne Arundel County. The "Information" filed in the circuit court charged Coleman with

1

the same offenses that were set forth in the Statement of Charges that had been filed in the District Court. This charging document also specifically noted that the penalty for possession with intent to distribute was "20yr/$25,000."

On January 21, 1999, Coleman appeared in the Anne Arundel County circuit court with counsel for a plea hearing.[1] At that hearing, the State informed the court that, pursuant to a plea agreement, Coleman would plead guilty to possession with intent to distribute cocaine and that, upon acceptance of that plea, the State would nol pros the remaining charges. The State further advised the court that it would be recommending a "lengthy sentence, the majority of it being suspended with only a small portion to be served at the Anne Arundel County Detention Center." It then added that, because defense counsel had "done a lot of work in assisting Mr. Coleman in getting into a college on the Eastern Shore, as part of the [sentencing] recommendation" it "would be requesting that as part of the probation he complete the SAT's." Moreover, it would not object if Coleman's probation were "to be transferred to the Eastern Shore" to accommodate his college schedule.

The court elicited from Coleman that he was then 19 years old, a high school graduate, and he was not under the influence of any drugs or medicine which might effect his understanding of the court proceedings that day. The court confirmed that Coleman understood the terms of the plea agreement, as reflected in the following exchange:

---

[1] It appears from the record before us that Coleman had retained private counsel to represent him in this case.

2

THE COURT:  All right, sir, my understanding of the agreement that you made with the State as expressed by the State's Attorney was, that you would plead guilty to Count Number 1, which I understand to be possession with intent to distribute and the drug is cocaine.  That the State would Nolle Pros, which is the same thing as dismissing any remaining counts in the indictment or information.

That the State is affirmatively recommending that you receive a lengthy jail sentence, mostly suspended and any unsuspended portion will be spent in the Anne Arundel County Detention Center.  That you be placed on a period of supervised probation and the State requests that I order you to take your SAT Exam.  Is that your understanding of the plea agreement, sir?

COLEMAN:  Yes.

* * *

THE COURT:  Do you understand that the Court is not bound by this recommendation made by the State and that the matters of sentencing and probation are completely up to the Court?

COLEMAN:  Yes.

After ensuring that Coleman understood the rights he would be waiving by entering a guilty plea, the circuit court specifically advised him with respect to his appellate rights, that "[t]he only thing that you would be able to do is file a motion for leave to appeal and it will be up to the Appellate Court as to whether they wish to grant you the right of appeal." When asked if he understood that advisement, Coleman indicated that he did and then, when asked if he had any questions about his appellate rights, he responded that he did not.

As the court's examination of Coleman progressed, it asked him whether he had "had time to talk" with his attorney and whether he was "satisfied with the services" rendered by

3

his counsel.  Coleman replied: "Yes."    Upon completion of its examination, the court

concluded that Coleman was entering his plea knowingly and voluntarily.

The State then proffered the following factual summary in support of that plea:

[O]fficers of the Annapolis City Police Department would have been called to testify.  The sum and substance of their testimony would have been that on February 19th of 1998, Officers Amoya (phonetic), Lowe (phonetic) and Bristo (phonetic) were dispatched to 708 New Town Drive in Annapolis, Anne Arundel County, in reference to a report of subject in the area involved in controlled dangerous substance activity.

When the officers arrived they were in marked vehicle and uniform. Officer Amoya observed three subjects in the area.  Officer Amoya got out of his vehicle [and] he began to approach, Defendant Orlando Ray Coleman, seated to the left of counsel in the navy blue sweatshirt jacket.

Mr. Coleman, on this date, was wearing blue nylon pants and a white sweatshirt.  When the officer got out of his vehicle he asked Mr. Coleman if he lived in the neighborhood, Mr. Coleman said no.  At this time as the officer was walking toward Mr. Coleman, Mr. Coleman had his hand in his back pocket, he retrieved and was handing before the officer actually asked for it, his identification, which was a Maryland driver's license.  The officer made a call on the radio checking the identification.  At that time the officer asked Mr. Coleman if he had any guns, drugs, weapons or any contraband on his person.  Mr. Coleman indicated that he did not.  The officer then asked for consent to search his person, Mr. Coleman stated, sure, I ain't got nothing on me.

At that point, the officer began a search of the Defendant's person, **when the officer reached into Mr. Coleman's right front pocket he immediately retrieved a clear sandwich baggie that the officer observed contained numerous pink self sealing baggies that each had off white rock like substance in each of those baggies**. The officer had no [sic] removed the bag completely from the pocket and as soon as the officer began pulling on the bag, Mr. Coleman began to pull away from the officer.  He began running, a foot chase ensued with Officer Amoya and the other two officers.  Mr. Coleman was apprehended and the bag, sent it to the laboratory for analysis, **the analysis revealed that it was, in fact, 83 individual glassine baggies**

4

**each containing what was analyzed and found to be cocaine**, a Schedule 2 controlled dangerous substance. The total weight of the cocaine was 9.9 grams.

The State would call **experts** who've been qualified before this court in the area of controlled dangerous substance packaging, street value, distributing methods. That [sic] **would testify that that quantity of cocaine, the way it was packaged and the close proximity that it was in and the $217 that Mr. Coleman had in his left pants pocket all would indicate an intent to distribute**. And that quantity of cocaine would have a street value of approximately $1,000.

The events occurred in Anne Arundel County. The witnesses would identify the Defendant, Orlando Ray Coleman, standing left of counsel to be the person in possession of that quantity of cocaine.

(Emphasis added.)

After defense counsel stated that the foregoing factual summary was "a correct informational statement," the court found Coleman guilty of the charge of possession with intent to distribute cocaine. When the court turned to the question of sentencing, the State advised that, although Coleman had no "adult criminal convictions," he had "one juvenile adjudication that did involve a quantity of cocaine[.]" Upon recommending nothing more than that the court "follow[] the recommendations," the State fell silent.

Defense counsel next addressed the court. He stated that he had met with Coleman "on a consistent basis" prior to trial and that, when Coleman was "picked up on this particular case, . . . he [Coleman] figured he'd get incarcerated for a large period of time— an enormous period of time and for that reason he had just sort of given up the hope of attending college." Then after outlining, for the court, the steps he had taken to assist

5

Coleman in furthering his education, he urged the court to permit Coleman "this opportunity

to pursue that educational goal[.]" The courtroom clerk thereupon noted that the sentencing

guidelines in this case were "one to three . . . because he [had] the one juvenile record." The

court subsequently sentenced Coleman to a term of five years' imprisonment. While that

term of imprisonment was greater than the sentence recommended by the guidelines,

"because of the quantity of cocaine in this case," the court suspended all but ten days of that

sentence and imposed a five-year period of supervised probation upon release.

In advising Coleman of his post-trial rights, the court informed him that he had "the

right to ask for leave to appeal" and that he would have to do so "in writing within the next

30 days." Coleman, nonetheless, never filed an application for leave to appeal nor did he

ever file a petition for post-conviction relief.[2]

*Petition for Coram Nobis Relief*

More than twelve years after pleading guilty in the Anne Arundel County circuit court

to possession with intent to distribute cocaine, Coleman pleaded guilty in the United States

District Court for the District of Maryland, in 2011, to possession with intent to distribute

heroin. Because of his 1999 Maryland state drug distribution conviction, Coleman believed

he was subject to an enhanced sentence as a "career offender," [3] and, citing those grounds,

---

[2] The record before us indicates that in August 2003, the circuit court revoked Coleman's probation and ordered him to serve his previously suspended sentence, which at that time amounted to four years, eleven months, and twenty days.

[3] Coleman asserts that, because he had two prior convictions for controlled dangerous
(continued...)

6

he filed a petition for writ of error coram nobis in the Anne Arundel County circuit court. In that petition, he challenged, for the first time, the validity of his 1999 state guilty plea,[4] claiming that his plea was not entered knowingly or voluntarily because, when he entered that plea, he was not advised of the maximum penalty he was facing nor informed of the elements and nature of the offense to which he was pleading guilty.

He further asserted that he did not "knowingly and intelligently" waive his right to file a petition for coram nobis relief and that "any failure on his part to pursue this claim earlier [was] excused by special circumstances."[5]    Discounting the circuit court's advisement regarding his appeal rights, he maintained that that advisement was "inadequate to convey even the rudiments of perfecting an application for leave to appeal under Maryland Rule 8-204" because, among other things, the court did not inform him "where or in which court the

—————————————

[3](...continued)
substances, including his 1999 Maryland state conviction, the federal sentencing guidelines ranged from 151 to 188 months – significantly more than the 46 to 57 months he claimed would have been applicable if he had no prior convictions.  Coleman was ultimately sentenced for the federal offense to 77 months of imprisonment.

[4] In *Parker v. State*, 160 Md. App. 672, 687-688 (2005), this Court held that the possibility of receiving an enhanced sentence in a subsequent criminal action because of a prior conviction constituted a "significant adverse consequence," and thus the circuit court erred in dismissing a petition for writ of coram nobis on the ground that it failed to state a claim warranting coram nobis relief.

[5] In *Holmes v. State,* 401 Md. 429, 445-446 (2007), the Court of Appeals held that, if a person, who pleads guilty after having been informed of his right to file an application for leave to appeal, does not seek appellate review, a rebuttable presumption arises that he or she has waived the right to challenge the conviction in a subsequent petition for writ of error coram nobis.

7

application must be filed" and did not specifically inform him that he "could challenge his conviction as well as his sentence."

In its opposition to the petition, the State asserted that Coleman had waived his right to file a petition for writ of error coram nobis by failing to file an application for leave to appeal and that there were no "special circumstances" excusing his failure to do so. The State also maintained that Coleman's guilty plea was lawfully entered.

The coram nobis court ultimately denied the petition, without a hearing, *see* Md. Rule 15-1206(a), but issued a thirteen page "Statement of Reasons" for its decision. *See* Md. Rule 15-1207(a) (the court shall prepare a statement setting forth each ground upon which the petition is based and the court's ruling with respect to each ground). The court explained that Coleman had waived his right to file a petition for coram nobis relief because he had not filed an application for leave to appeal following his conviction and that there were no "special circumstances" excusing that omission.

The coram nobis court further stated that, even if Coleman had not waived his right to file such a petition, his claim was without merit. Relying upon *State v. King*, 71 Md. App. 229, 233 (1987), which held, among other things, that "it is not reversible error to fail to advise the accused of the statutory maximum sentence he or she might have received" when the sentence actually imposed pursuant to a plea bargain "is well below the statutory maximum and the accused is informed as to the precise sentence he or she will receive," the coram nobis court explained that the sentence Coleman received was "exactly what he [had]

8

bargained for" and that any error in not advising him of the maximum possible sentence was "harmless." And, as for the failure to be advised on the record of the elements and nature of the offense of possession with intent to distribute, the coram nobis court declared that that offense "is so simple in meaning that it can be readily understood by a lay person." In response to that decision, Coleman noted this appeal.

## QUESTIONS PRESENTED

Coleman presents two questions for our review:

I.      Does the enactment of Chapter 437, Acts of 2012 (codified as Maryland Code 2001, 2008 Repl. Vol. 2012 Supp.) Criminal Procedure Article § 8-401 bar a determination that Appellant waived his right to challenge his conviction by writ of error coram nobis?

II.     Did the trial court err in determining that Appellant's plea of guilty was knowingly and voluntarily entered, with understanding of the nature of the charge and the consequences of the plea?

## DISCUSSION

### *Waiver*

In *Holmes v. State*, 401 Md. 429 (2007), the Court of Appeals held that, if "an individual who pleads guilty, having been informed of his right to file an application for leave to appeal from his conviction and sentence, does not file such an application for leave to appeal, a rebuttable presumption arises that he has waived the right to challenge his conviction in a subsequent coram nobis proceeding." *Id.* at 445-446. In 2012, the General Assembly, in an apparent reaction to *Holmes,* enacted § 8-401 of the Criminal Procedure Article of the

9

Maryland Code (2008 Repl. Vol., 2013 Supp.). It provides: "The failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis." This law became effective October 1, 2012.

Although Crim. Proc., § 8-401 became effective *after* he filed his petition for writ of error coram nobis, Coleman maintains that it applies retroactively to his case. We addressed this issue in *Graves v. State*, 215 Md. App. 339 (2013), *cert. granted,* 437 Md. 637 (2014), and concluded that, because Crim. Proc., § 8-401, was "both procedural and remedial in nature," it does, indeed, "operate retroactively[.]" *Id.* at 351-352. And thus, Graves did not waive his right to petition for coram nobis relief "by failing to challenge his guilty plea in an application for leave to appeal." *Id.* at 352. As Coleman is in precisely the same position, the same is true here.[6] Coleman did not waive his right to seek coram nobis relief by not filing an application for leave to appeal following his 1999 conviction and sentence.

The State also asserts that Coleman waived his right to coram nobis relief by failing to challenge the validity of his guilty plea in a post-conviction proceeding. The State, however, did not raise that issue below, and, thus, it is not properly before us. *Id.*; Md. Rule 8-131(a) (An appellate court ordinarily will not decide an issue "unless it plainly appears by the record to have been raised in or decided by the trial court.").

_____

[6] Our decision in *Graves* was filed after the parties filed briefs in this case.

*The Merits*

First, Coleman claims that his guilty plea was not entered knowingly or voluntarily, noting that the record of the plea proceeding does not reflect that he was ever advised of the maximum penalty he was facing. He points out that a conviction for possession with intent to distribute entailed, at that time, a maximum sentence of twenty years' imprisonment, yet "no numbers were utilized at all," he stresses, "in describing the State's recommendation or the length of the sentence that would or could be imposed." Relying on *Bryant v. State,* 47 Md. App. 551 (1981), that was reversible error, claims Coleman.

In *Bryant,* the defendant pleaded guilty to escape and was sentenced to a term of two years' imprisonment, to run consecutive to a sentence he was then serving. *Id.* at 552. In the appeal to this Court that followed, he asserted that his plea was not entered with an understanding of the consequences of the plea because he was never informed of the maximum penalty he could face.[7] *Id.* at 554-555. This Court agreed and vacated the judgment. *Id.* at 556-557. In so doing, we observed that, before accepting a guilty plea, a court must ensure that the defendant understands the "consequences of the plea." *Id.* at 555 (citing Md. Rule 731(c), presently Md. Rule 4-242(c)). Because punishment is a consequence of a guilty plea, and, in *Bryant,* "there was no plea agreement with respect to punishment,"

---

[7] At the time *Bryant v. State,* 47 Md. App. 551 (1981) was decided, a defendant who pleaded guilty in the circuit court had the right to appellate review by way of a direct appeal. Effective July 1, 1983, appellate review, following the entry of a guilty plea, can only be obtained upon the grant of a timely filed application for leave to appeal.

11

we concluded that the court was required to inform the defendant of the maximum possible sentence he was facing prior to accepting the plea. *Id.* at 555-557.

Ignoring *Bryant*, the State asserts that the coram nobis court correctly found *King, supra,* to be controlling in this instance. King pleaded guilty to assault with intent to rob pursuant to a plea agreement that provided for a sentence not to exceed four years' imprisonment. 71 Md. App. at 231. And, in accordance with that agreement, the trial court imposed a four-year sentence. *Id.*

At an ensuing post-conviction proceeding, King claimed that his guilty plea was not voluntarily entered because he had not been informed of the maximum penalty that could have been imposed for that offense. *Id.* The post-conviction court, relying on *Bryant, supra,* agreed that the plea was defective and ordered a new trial. *Id.* But, after granting the State's request for leave to appeal, we reversed, observing:

> The statutory maximum penalty is not a magic wand which must be waved over the [plea] proceeding in order to validate it. The purpose of informing an accused of the maximum sentence is to assure that [the] defendant understands the sentence he or she could receive. That information is particularly pertinent when either the plea is not founded upon a representation that a specific lesser sentence will be imposed or the bargained for sentence is at or near the maximum permitted by statute.

*Id.* at 232-233.

We further noted that, where "the bargained sentence is well below the statutory maximum and the accused is informed as to the precise sentence he or she will receive, it is not reversible error to fail to advise the accused of the statutory maximum he or she might

12

have received absent the plea bargain." *Id*. at 233. Because King had "received that for which he bargained," that is, a sentence not to exceed four years' imprisonment, we concluded that it was not necessary to grant him a new trial "simply because he was not advised, on the record, as to the maximum sentence he could have received[.]" *Id.*

The State asserts that Coleman, like King, received what he "bargained for" and that any error in failing to advise him at the plea proceeding of the statutory maximum penalty for possession with intent to distribute was harmless. Coleman responds that *King* is distinguishable because, in his case, "the court did not state the sentence that would be imposed and in fact made clear that [it] would not be bound by the recommendation made by the State." Accordingly, he insists that, "[b]ecause the record does not demonstrate" that he knew the maximum penalty that could be imposed, his plea was "not valid."

Although we agree with Coleman that *King* is factually distinguishable from his case in that he (Coleman) was not sentenced in accordance with a binding plea agreement, we disagree with his contention that the failure of the trial court to ensure at the plea proceeding that he was aware of the maximum penalty for the offense entitles him to coram nobis relief. In *Bryant, supra,* the case upon which Coleman relies, the defendant was granted relief following a direct appeal. In contrast, Coleman not only failed to seek appellate review following his guilty plea, but he also neglected to request post-conviction relief during his probation or while incarcerated after his probation was terminated. Instead, twelve years after

13

entering his plea, Coleman collaterally challenged it in the form of a petition for writ of error coram nobis.

As the United States Supreme Court observed in *United States v. Morgan*, 346 U.S. 502, 511 (1954)), "[c]ontinuation of litigation after final judgment and [after] exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy [writ of error coram nobis] *only under circumstances compelling such action to achieve justice.*" (Emphasis added.) Citing that case, the Court of Appeals in *Skok v. State*, 361 Md. 52 (2000), expanded the traditional scope of coram nobis relief in Maryland and, in so doing, acknowledged the *Morgan* Court's declaration that coram nobis is an "'extraordinary remedy'" that "should be employed only upon 'compelling' circumstances." *Id.* at 72.

Thus, even assuming that a petitioner has met the prerequisites for coram nobis relief,[8] we are not aware of any Maryland decision mandating that relief be granted in the absence of "circumstances compelling such action to achieve justice." As the Supreme Court stated in *United States v. Denedo*, 556 U.S. 904, 916 (2009), "judgment finality is not to be lightly cast

---

[8] In *Skok v. State,* 361 Md. 52 (2000), the Court of Appeals expanded the traditional scope of coram nobis relief in Maryland, but did so "subject to several important qualifications." *Id.* at 78. Those qualifications are that the grounds for challenging a criminal conviction "must be of a constitutional, jurisdictional or fundamental character" *id.;* that "the burden of proof is on the coram nobis petitioner" *id.;* that "the coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction," *id.* at 79; that "[b]asic principles of waiver are applicable", *id.* and that "one is not entitled to challenge a criminal conviction by a coram nobis proceeding if another statutory or common law remedy is then available." *Id.* at 80 (citations omitted).

14

aside; and courts must be cautious so that the extraordinary remedy of *coram nobis* issues only in extreme cases." *See also Bousley v. United States,* 523 U.S. 614, 621 (1998) ("'the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas'") (quoting *United States v. Timmreck,* 441 U.S. 780, 784 (1979)); *Holmes, supra,* 401 Md. at 473 (noting the "limited nature" of the "extraordinary" writ of error coram nobis).

A petition for writ of error coram nobis is "an equitable action originating in common law," *Moguel v. State,* 184 Md. App. 465, 471 (2009), and not a belated direct appeal, a principle which we cannot over-emphasize. Thus, as the United States Court of Appeals for the First Circuit observed in *United States v. George*, 676 F.3d 249 (1st Cir. 2012), relief that may have been granted upon direct appeal will not necessarily be obtained through a writ of error coram nobis. The Court explained:

> The further a case progresses through the remedial steps available to a criminal defendant, the stiffer the requirements for vacating a final judgment. Thus, direct review is more defendant-friendly than post-judgment review and an initial habeas petition is easier for a criminal defendant to litigate than a successive one. The writ of error coram nobis lies at the far end of this continuum. Logically, then, when a defendant seeks to vacate a guilty plea by way of coram nobis, red flags accompany that request.
>
> \* \* \*
>
> Each request for a writ of error coram nobis must be judged on its own facts. Even if we assume for argument's sake that the petitioner has satisfied the [requirements for relief], we know of no binding authority that would compel us, when making an essentially equitable determination regarding the appropriateness of extraordinary relief, to grant coram nobis. When all is said

15

and done, issuing or denying a writ of error coram nobis must hinge on what is most compatible with the interests of justice, and our discretion must be guided by that inquiry.

*Id.* at 258-259 (citations omitted).

When an appellant on direct appeal claims that a guilty plea was not knowingly and voluntarily entered "with an understanding of the nature of the charge and the consequences of the plea," as required by Maryland Rule 4-242(c), we look at the "totality of the circumstances" as reflected on "'the record as a whole' that was before the trial judge" during the plea proceeding. *State v. Daughtry*, 419 Md. 35, 80 n. 31 (2011) (quoting *State v. Priet*, 289 Md. 267, 291 (1981)). In other words, evidence extrinsic to the plea proceeding itself is not considered. *Id.* (citing *Cuffley v. State*, 416 Md. 568, 582 (2010) (when determining the terms of a binding plea agreement, we look "*solely* to the record established at the Rule 4-243 plea proceeding" and "extrinsic evidence of what the defendant's actual understanding might have been is irrelevant to the inquiry.")). We are not aware, however, of any reported Maryland appellate decision holding that a court's review is confined solely to the record of the plea hearing when a guilty plea is challenged collaterally via a petition for writ of error coram nobis – an equitable proceeding frequently initiated many years after the plea was entered.

But, Maryland Rule 15-1206 implies that such a limitation does not apply to a circuit court reviewing a petition for writ of error coram nobis. Paragraph (a) of that Rule provides that a court may hold a hearing on the petition (and must do so if relief is granted) and it "may

16

permit evidence to be presented by affidavit, deposition, oral testimony, or any other manner that the court finds convenient and just."[9] By implication, Rule 15-1206(a) suggests that a court considering a request for coram nobis relief may, in fact, look beyond the record of the guilty plea hearing in considering whether to grant or deny such relief. *See also State v. Castellon-Gutierrez*, 198 Md. App. 633, 644-65 (2011) (without a discussion of the appropriateness of doing so, evidence extrinsic to the plea hearing was considered in a coram nobis proceeding – and subsequently by this Court upon appeal – in determining whether the defendant, after conviction and sentencing following his guilty plea, was properly advised of his appellate rights).

The record before us indicates that, when Coleman made his initial court appearance, the court commissioner informed him "of each offense with which he [was] charged and of the allowable penalties, including mandatory penalties, if any." The charging document filed in the circuit court also noted the penalty for each offense and, with regard to possession with intent to distribute, it stated: "Penalty - 20 yr/ $25,000." Coleman was represented at the plea hearing by counsel, who informed the court that he had met with Coleman on a "consistent basis" prior to trial; and subsequently, at sentencing, Coleman's counsel told the court that, after Coleman was charged in this case, Coleman "figured he'd get incarcerated for a large period of time – an enormous period of time[.]" Finally, although the offense carried a

---

[9] Maryland Rules 15-1201 *et seq.* pertain to "proceedings for a writ of coram nobis as to a prior judgment in a criminal action." Rule 15-1201.

maximum possible term of twenty years' imprisonment and a $25,000 fine, the trial court imposed a five-year term, suspending all but ten days, and did not impose a fine – a punishment significantly less than the maximum permitted by statute.

In short, while Coleman may have had a persuasive argument to make in an application for leave to appeal (which he never filed), we find no error in the circuit court's decision to deny him the "extraordinary remedy" of coram nobis relief where the "totality of the circumstances," as reflected in the *entire* record before us, indicates that he was, in fact, aware of the maximum possible penalty that could be imposed upon conviction. Moreover, he was sentenced well below that maximum. As the First Circuit noted in *George, supra,* "the writ [of error coram nobis] is designed to do justice, not to facilitate a miscarriage of justice." 676 F.2d at 259.

Coleman next asserts that his guilty plea was not knowingly and voluntarily made because he was not advised of the elements or nature of the offense to which he was pleading guilty in contravention of Maryland Rule 4-242(c), which provides that a court, before accepting a guilty plea, must determine that the defendant, among other things, understands "the nature of the charge." The coram nobis court rejected Coleman's argument, noting that "possession with intent to distribute is so simple in meaning that it can be readily understood by a lay person." We agree.

Coleman was 19 years old when he entered the plea, he was taking steps to enroll in college, and he had met with his attorney multiple times prior to the plea hearing. As we

stated in *Gross v. State*, 186 Md. App. 320, 342 (2009), the offense of possession of cocaine with intent to distribute "is straight forward and simple." Moreover, when Coleman filed his petition for writ of coram nobis he did not allege, nor assert in the affidavit he filed with that petition, that he did not understand the nature of the offense of possession with intent to distribute when he pleaded guilty to that crime.

Furthermore, in the statement of facts proffered by the State in support of the plea, the State noted that the police had recovered from Coleman's pocket "83 individual glassine baggies each containing what was analyzed and found to be cocaine" and that experts would have testified at trial that the quantity and packaging of the recovered cocaine "would indicate an intent to distribute." As the Court of Appeals noted in *Daughtry*, *supra,* 419 Md. at 74, a "'factual basis proffered to support the court's acceptance of the plea' may describe the offenses charged in sufficient detail to pass muster under [] Rule [4-242]," which is what occurred here. Accordingly, the circuit court did not err in rejecting this and other grounds alleged by Coleman in his petition for coram nobis relief.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

19