*Jeanette Reyes v. State of Maryland*
No. 1092, Sept. Term, 2020
Opinion by Leahy, J.

**Criminal Law > Postconviction Relief > Writ of Error Coram Nobis > Defenses > Laches**

In addition to showing an unreasonable delay, a party asserting laches must show prejudice resulting from the delay. *Jones v. State*, 445 Md. 324, 329 (2015); *Fludd v. Kirkwood*, ___ Md. App. ___, No. 1297, September Term 2020, at slip op. 14 (filed Dec. 16, 2021); *Anderson v. Great Bay Solar I, LLC*, 243 Md. App. 557, 610 (2019). Here, the State did not assert any form of prejudice in its answer to the coram nobis petition. Then, during the coram nobis hearing, the State conceded, multiple times on the record, that it suffered no prejudice from the delay. Accordingly, we hold that the State has waived its defense of laches.

**Criminal Law > Postconviction Relief > Writ of Error Coram Nobis > Equitable Factors**

The failure to seek a direct appeal has limited relevance to the coram nobis analysis. Since the General Assembly enacted Maryland Code (2001, 2018 Repl. Vol.), Criminal Procedure Article, § 8-401, it has been the law of our State that a petitioner does not waive her right to coram nobis relief by failing to seek a direct appeal. We conclude that the circuit court was incorrect to consider Ms. Reyes's failure to seek a direct appeal as a factor in its analysis because doing so is incompatible with the public policy expressed by the General Assembly in CP § 8-401.

**Criminal Law > Postconviction Relief > Writ of Error Coram Nobis > Equitable Factors**

We do not think that the amount of time elapsed between Ms. Reyes's conviction and her coram nobis petition was a proper factor for the circuit court to consider in its coram nobis analysis. Because the State conceded that it suffered no prejudice from Ms. Reyes's delay in bringing her petition, the delay had limited relevance—if any—to a weighing of the equities of this case.

**Criminal Law > Guilty Pleas > Knowledge of Maximum Sentence**

While the State is correct that *Coleman v. State*, 219 Md. App. 339 (2014), considered the petitioner's actual sentence as a factor in its decision, it played a relatively small role in our analysis. The dispositive factor in *Coleman* was that even though the petitioner was not properly informed of the maximum sentence at his plea hearing, he had actual knowledge of the true maximum sentence before he pleaded guilty. *Id.* at 357.

**Criminal Law > Guilty Pleas > Knowledge of Maximum Sentence**

We are presented with facts very different from those of *Coleman v. State*, 219 Md. App. 339 (2014). From the outset of Ms. Reyes's criminal case, she was repeatedly told that she faced a maximum sentence that was only one quarter of the actual maximum sentence. The representations of the parties at the sentencing hearing make it clear that this misunderstanding persisted throughout the entire case until after Ms. Reyes pleaded guilty, and the State identifies no evidence in the record to contradict that timeline. This is in no way comparable to Coleman's actual knowledge of the true maximum sentence prior to his plea. *Id.* at 356.

**Criminal Law > Guilty Pleas > Knowledge of Maximum Sentence > Knowledge After Acceptance of Plea**

Rule 4-242(c) is concerned solely with the defendant's knowledge at the time of the plea, and the defendant's knowledge at a subsequent sentencing hearing is irrelevant to that determination. *State v. Daughtry*, 419 Md. 35, 76 n.25 (2011) ("[D]efense counsel's statement that Daughtry 'understands what he's been charged with' at a sentencing hearing sixteen months after the plea hearing in no way informs the question of what Daughtry understood at the plea hearing itself.").

**Criminal Law > Guilty Pleas > Knowledge of Maximum Sentence > Knowledge After Acceptance of Plea**

Ms. Reyes was silent at her sentencing hearing after the prosecutor stated the maximum sentence for her offense. But even if Ms. Reyes heard and comprehended the prosecutor's comment, her knowledge of the maximum sentence at the sentencing hearing is not probative of her knowledge at the plea hearing two months earlier. *State v. Daughtry*, 419 Md. 35, 76 n.25 (2011).

Circuit Court for Montgomery County
Case No. 97534C

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1092

September Term, 2020

_____

JEANETTE REYES

v.

STATE OF MARYLAND

_____

Arthur,
Leahy,
Eyler, Deborah S.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Leahy, J.

_____

Filed: January 26, 2022

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Jeanette Reyes, born in El Salvador in 1976, came to this country as a child.  She is not a citizen, but she has been a lawful permanent resident since October 27, 1990, when she was fourteen years old.

In 2003, Ms. Reyes was charged with possession of a controlled dangerous substance with intent to distribute.  The State intended to prosecute her for possession with intent to distribute cocaine, which would have had a maximum possible sentence of twenty years' imprisonment.  But at some point in the charging process, an error was made.  The State mistakenly maintained that the maximum sentence she faced was only five years, not twenty, and she was told as much at her initial appearance.[1]

Ms. Reyes pleaded guilty at a hearing on June 9, 2003.  Throughout the entire hearing, all parties involved, including the presiding judge, were operating under the belief that the maximum sentence for her offense was five years.  The plea was made pursuant to a very limited agreement, which provided only that Ms. Reyes would plead guilty, the State would ask for a sentence on the high end of the guideline range, and Ms. Reyes would ask for a sentence on the low end.  The parties believed that the guidelines ranged from probation up to twelve months' imprisonment; however, the actual range was from six months' to three years' imprisonment.

Before Ms. Reyes pleaded guilty, she claims that she asked her attorney whether pleading guilty would make it harder for her to gain American citizenship, and her attorney advised her that her plea would have no effect and that it would be off her record in five to

_____

[1] There is no evidence in the record to suggest that the State's error was made in bad faith.  With no evidence to the contrary, we assume that it was an honest mistake.

seven years. In fact, the conviction makes her permanently ineligible for citizenship and makes her subject to deportation with no possibility of discretionary relief.

Now, faced with these significant immigration consequences, Ms. Reyes seeks to have the conviction vacated through a petition for a writ of error coram nobis. She argues that her plea was obtained in violation of Maryland Rule 4-242(c), which requires the court to determine that a defendant "understand[s] the nature of the charge and the consequences of the plea." Her petition was denied by the Circuit Court for Montgomery County, and she appealed that decision to this Court.[2]

The record reflects that Ms. Reyes did not understand the consequences of her plea, nor could she reasonably have been expected to. The misinformation she was given about her maximum possible sentence, as unintentional as it may have been, denied her the opportunity to reach a considered decision about whether to plead guilty or go to trial. We reach this conclusion in light of the totality of her circumstances: she was not born in this country; she had an otherwise clean record, giving her no experience in the criminal justice system; based on transcripts, she appeared to speak imperfect English; all authority figures in the process, including her attorney, consistently misstated both the maximum sentence she faced and the corresponding sentencing recommendation that the State would make;

---

[2] She framed the question presented to this Court as follows:

"Did the Circuit Court for Montgomery County erroneously find that Appellant's guilty plea was knowing and voluntary when she was not advised of the maximum penalty as required by Md. Rule 4-242(c) and was further improperly advised as to the maximum penalty numerous times throughout the pendency of the case?"

and, it appears that her lawyer reassured her, incorrectly, that pleading guilty would not affect her chances of becoming a citizen.

Accordingly, we vacate the judgment of the circuit court denying Ms. Reyes's coram nobis petition and remand for further proceedings.

## BACKGROUND

### The Underlying Crime

At Ms. Reyes's plea hearing, the circuit court heard a proffer of facts from the State. According to the State's proffer, on March 5, 2002,[3] a police informant had "arranged to meet with Ms. Reyes to purchase a quarter ounce of cocaine" from her for $600. Several police officers observed Ms. Reyes, who was with two other individuals that day. "At one point she got out of the car, went to the back of her vehicle, opened up the trunk and appeared to be manipulating something in the back of the trunk. The deal didn't go through."

Police then pulled Ms. Reyes over in a traffic stop based on a traffic infraction, and Ms. Reyes gave her consent for them to search herself and her vehicle. The officers searched the back of the vehicle where Ms. Reyes had been seen manipulating something, and they found 16 grams of cocaine.

Ms. Reyes was advised of her rights, and she waived her right to counsel. She told the officers that she was there to sell a quarter ounce of cocaine for $600 to the buyer whom the police had used as an informant.

---

[3] The State said the year was 2002 in its proffer, but the charging document states the date was March 5, 2003.

3

Additionally, in its proffer, the State indicated that if the case had gone to trial, the State would have called an expert witness who "would have testified that based on the facts of this case and his training and experience, that 16 grams and the facts in that case were sufficient to suggest that [Ms. Reyes] had the intent to distribute cocaine."

Ms. Reyes's attorney stated that he and Ms. Reyes "ha[d] no substitutions or corrections to the State's proffered facts." Ms. Reyes, an immigrant and a mother of two children,[4] was charged with possession with intent to distribute cocaine under Maryland Code (2002), Criminal Law Article ("CR"), § 5-602.[5, 6]

**Criminal Proceedings**

Ms. Reyes made her initial appearance in the District Court for Montgomery County on March 6, 2003. A "Charge Summary" was filed that day at 3:01 AM, which described

---

[4] The record informs us that Ms. Reyes had two children at the time of her sentencing in 2003.

[5] Unless otherwise stated, all subsequent citations to the Criminal Law Article refer to the Article as it existed when Ms. Reyes was convicted in 2003.

[6] In 2003, CR § 5-602 stated:

Except as otherwise provided in this title, a person may not:

(1) Manufacture, distribute, or dispense a controlled dangerous substance; or

(2) Possess a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to manufacture, distribute, or dispense a controlled dangerous substance.

The current text of CR § 5-602 differs only in that the word "manufacture" has been removed from subsections (1) and (2). Maryland Code (2002, 2021 Repl. Vol.), CR § 5-602.

4

her charge as "CDS POSS W/INT TO DIST" and listed the penalty as "5 Y &/or $15,000.00." In 2003, however, possession with intent to distribute cocaine carried a maximum sentence of 20 years and/or $15,000. CR § 5-608(a).[7]

The district court also issued an "Initial Appearance Report" which certified that Ms. Reyes had been informed "of each offense charged and of the allowable penalties." This report did not expressly state what offenses and penalties Ms. Reyes was informed of.

A "Pre-Indictment Memorandum" dated April 9, 2003 stated that Ms. Reyes and the State had reached an agreement whereby she would plead guilty, and the State would ask for a sentence within the sentencing guidelines. Significantly, the Pre-Indictment Memorandum also stated that her sentencing guidelines range was "Probation to 12 months." This guidelines range was incorrect. The correct guidelines range, later agreed

---

[7] The State later informed Ms. Reyes's attorney that it had mistakenly calculated her sentencing guidelines based on an offense of possession with intent to distribute marijuana, not cocaine. Notably, possession with intent to distribute marijuana has a maximum sentence of "5 years or a fine not exceeding $15,000 or both"—which was the maximum sentence listed in Ms. Reyes's charge summary. CR § 5-607(a). It appears that the State likely made the same mistake of substituting marijuana for cocaine in its calculation of both the sentencing guidelines and the maximum sentence.

While the maximum sentence for possession with intent to distribute marijuana has remained the same since 2003, the sentencing guidelines range has been reduced. In 2003, the range was probation to 12 months; now, the range is probation to three months. *Compare* Maryland Sentencing Guidelines Manual at 29 (Version 2.0, 2003) (stating that for an offender with an offender score of zero, and an offense with seriousness category of IV, the range is probation to 12 months), *with* Maryland Sentencing Guidelines Manual at 35 (Version 13.2, 2021) (for the same type of offense and offender, listing a guidelines range of probation to three months).

5

upon by the parties at Ms. Reyes's sentencing hearing, was six months to three years.[8] The State also filed an information on the same day which charged her with one count of possession with intent to distribute a controlled dangerous substance, but it did not state a maximum sentence or sentencing guidelines range.

Ms. Reyes pleaded guilty to possession with intent to distribute a controlled dangerous substance in a circuit court hearing that was held on June 9, 2003. Before her plea was accepted, the court asked her a series of questions to determine whether her plea was knowing and voluntary. The record reflects the following colloquy:

> THE COURT: Ms. Reyes, I need to ask you a few questions before I accept this plea to make sure you understand what you're doing and that you're doing it freely and voluntarily. Tell me first how old you are.
>
> MS. REYES: How old I am?
>
> THE COURT: Yes.
>
> MS. REYES: 26.
>
> THE COURT: How far have you gone in school?
>
> MS. REYES: Graduated from high school.
>
> THE COURT: Were you on probation for anything when the events in this case occurred?

---

[8] This range is calculated as follows. First, Ms. Reyes had an offender score of zero because she had no prior involvement with the criminal justice system, either as a juvenile or as an adult. Maryland Sentencing Guidelines Manual at 19 (Version 2.0, 2003). Second, her offense of possession with intent to distribute cocaine had a seriousness category of III. *Id.*, Appendix A at 5. The Manual states that for an offender with an offender score of zero and an offense with seriousness category III-B (non-marijuana and non-MDMA, except import), the sentencing guidelines range is six months to three years. *Id.* at 29. The same guidelines range would apply today. Maryland Sentencing Guidelines Manual at 35, Appendix A at 9 (Version 13.2, 2021).

MS. REYES: Never.

THE COURT: All right. And, do you understand that if you are not a citizen of the United States a finding of guilty in this case could affect your status in this country?

MS. REYES: Yes, Your Honor.

THE COURT: And, you don't have to plead guilty at all. You have an absolute right to have a trial. If you elected to go forward with a trial, you are presumed innocent. You don't have to do anything. The burden is completely on the State to prove you guilty beyond a reasonable doubt.

If you elected to go to trial, your attorney would have a chance to question witnesses that the State would call and to call witnesses on your behalf. You would be free to testify to talk about what happened, by [sic] you don't have to testify and no one can think badly of you if you elect not to testify. You couldn't be found guilty unless all 12 jurors unanimously agreed you were guilty beyond a reasonable doubt.

Are you sure you want to waive all your rights to trial and go through with this plea?

MS. REYES: I wouldn't, I wouldn't like to go to trial. (Unintelligible) trial.

THE COURT: You want to plead guilty. You don't want to have a trial?

MS. REYES: Right.

THE COURT: Okay. And, are you pleading guilty because you are guilty, not for any other reason?

MS. REYES: Because I'm sure I am guilty, Your Honor.

THE COURT: Are you taking any kind of prescription medications today?

MS. REYES: No, Your Honor.

THE COURT: Are you under the influence of any type of drugs or alcohol today?

MS. REYES: No, Your Honor.

THE COURT: Anybody forcing you to plead guilty, threatening you in any way?

7

MS. REYES: No.  I've been thinking about it for several months –

THE COURT: Okay.

MS. REYES: The decision.

THE COURT: Okay.

After this exchange with Ms. Reyes, the State made a proffer of facts supporting the guilty plea, in which the State alleged that Ms. Reyes had been found with 16 grams of cocaine in her vehicle.  Ms. Reyes's counsel stated that he and his client had "no substitutions or corrections" to this proffer of facts.

The court then asked counsel for both parties whether they had reached an agreement about Ms. Reyes's sentence:

> THE COURT: Okay.  There is no agreement with respect to disposition, is that right?
>
> DEFENSE COUNSEL: No, it's as I understand the State's free to ask for whatever it wants to ask for.  We're going to ask for what we want to ask for. **And, the guidelines, if I understand them, are for probation to –**
>
> **THE STATE: Twelve months.**
>
> **DEFENSE COUNSEL: – 12 months.**
>
> **THE STATE: Well, the State's asking for, we're not going to ask for more than 12 months.**
>
> **DEFENSE COUNSEL: Yes.**
>
> **THE STATE: We're asking for a, a guideline sentence.**
>
> DEFENSE COUNSEL: They're going to ask for something between the guidelines, within the guidelines, and we're just free to ask.
>
> THE COURT: Okay.

(Emphasis added).

Two months later, on August 19, 2003, the circuit court held a sentencing hearing. At this hearing, counsel informed the court that the parties had made a mistake in the sentencing guidelines calculation referenced in the plea hearing:

> THE COURT: Good morning. This is here this morning for sentencing on one count of possession with intent to distribute.
>
> DEFENSE COUNSEL: Your Honor, the State has indicated to me that the guideline calculation was wrong. **They said, [the prosecutor] told me this morning that she says that was calculated by [the State's Attorney's Office] because marijuana [is] from zero to 12 but if it was cocaine it would be she says six months to three years.** I'll accept what she says but assuming –
>
> THE COURT: Well, at the plea I was told it was probation to 12. The computation does have six to three.
>
> DEFENSE COUNSEL: Yes. I'm just, I didn't know. I'm just pointing out. We received the –
>
> THE COURT: So, six to three we think is the accurate one?
>
> DEFENSE COUNSEL: Yes.

(Emphasis added).

Later in the hearing, the State also mentioned the actual maximum sentence for the offense: "I mean, is this how serious she's taking it? This is a 20-year offense, a maximum. Certainly, the State never said they were asking for that[.]"

Defense counsel asked that Ms. Reyes be sentenced only to probation, and the State asked for six months' imprisonment as well as additional time on supervised probation. The court concluded the hearing by imposing a one-year suspended sentence and placing Ms. Reyes on one year of supervised probation.

9

**Reyes's Immigration Status**

Ms. Reyes is not a citizen of the United States, but she has had permanent resident status since she obtained it as a child on October 27, 1990. In April 2016, Ms. Reyes applied for United States citizenship. Three years later, on February 13, 2019, the United States Citizenship and Immigration Services (USCIS) denied her application. USCIS stated in its decision that, under 8 U.S.C. § 1101(a)(43)(B), Ms. Reyes would have to "demonstrate that [she is] a person of good moral character" to be eligible for naturalization. But because her conviction fits the definition of an "aggravated felony," 8 U.S.C. § 1101(a)(43)(B), the agency told her that she was "permanently barred" from attempting to establish good moral character, and that she would therefore never be eligible for naturalization.[9] As far as the record reveals, this was the first time that Ms. Reyes was told of the immigration consequences of her conviction.

**Coram Nobis Proceedings**

On August 20, 2019, Ms. Reyes filed a Petition for Writ of Error Coram Nobis in the Circuit Court for Montgomery County. In her petition, she asserted that her conviction was invalid because her guilty plea was accepted in violation of Maryland Rule 4-242(c). She argued that her guilty plea was not knowing and voluntary because (1) the criminal court failed to advise her of the maximum sentence she could face upon pleading guilty, and (2) the criminal court failed to advise her of the "nature or elements" of the offense.

---

[9] The 2003 conviction was the only basis that USCIS stated for its denial of her application. The record does not indicate that Ms. Reyes has any other criminal history before or after the conviction at issue in this case.

10

The second argument, regarding the nature or elements of the offense, is not before us on appeal.

In response, the State filed an Answer to Petition for Coram Nobis Relief. In this answer, the State argued that the doctrine of laches barred Ms. Reyes from seeking coram nobis relief because almost seventeen years had elapsed between her guilty plea and the filing of her coram nobis petition. The State acknowledged that laches only applies when the delay is prejudicial, but it never alleged that the delay in this case was in fact prejudicial.

The State also argued that, considering the totality of the circumstances, Ms. Reyes did not state a basis to vacate her guilty plea. The State asserted that she should be presumed to know the maximum sentence because she was represented by experienced counsel and she had been informed of the maximum sentence at her initial appearance prior to her plea. To support the factual claim that she had been informed of the maximum sentence at her initial appearance, the State cited to Ms. Reyes's Initial Appearance Report which certified that Ms. Reyes was informed of the "allowable penalties" for her charged offense, although the report does not state exactly what allowable penalties were communicated to her.

The circuit court held a hearing on Ms. Reyes's coram nobis petition on October 23, 2020.

After hearing legal arguments from the parties, the court heard testimony from Ms. Reyes.[10] On direct examination, her testimony was mostly focused on her interactions with

---

[10] Ms. Reyes was the only witness called to testify in the coram nobis proceedings.

11

her defense attorney in the criminal case prior to her guilty plea. She testified that she had three meetings with him, and that he said nothing to her about the maximum penalty for her charged offense. She also testified that her defense attorney never advised her about the sentencing guidelines that would apply in her case. She was also asked whether she had been shown "a worksheet with the amount of time that [she would] be eligible to receive[.]" The transcript records her response to this question as: "I remember (unintelligible), but I was never explained." The record is not clear as to what worksheet this refers to. The only documentation in the record before us now that purports to state her maximum possible sentence is the charge sheet, which incorrectly lists it as five years.

Regarding her immigration and citizenship status, Ms. Reyes testified that her defense attorney had given her false advice about what the consequences of her plea would be. According to her testimony, he told her that in "five to seven years . . . [the conviction] was going to be off [her] record." Specifically, she asked her defense attorney whether the plea would affect her efforts to become a citizen, and he said "no."[11]

Ms. Reyes's direct examination concluded with the following exchange:

Q: Ms. Reyes, knowing the consequences that you suffer now, what would have been your choice regarding having a trial or pleading guilty?

A: Going to trial, of course.

On cross examination, counsel for the State focused on Ms. Reyes's understanding of the elements of the crime, which is not before us as an issue on appeal.

---

[11] Reyes's coram nobis petition also suggested that her guilty plea was invalid because it was the product of ineffective assistance of counsel. This issue was not raised on appeal.

12

Following Ms. Reyes's testimony, the court heard legal arguments from the parties. During the State's argument that Ms. Reyes's petition was barred by laches, the court had the following exchange with counsel for the State:

THE STATE: Your Honor, as for the, I'll just start with the laches argument if that's where we are. I don't see the distinction in the *Jones* case that counsel is trying to make. I understand factually it's a distinction, and I appreciate the argument. It's a good one, it's just, that doesn't seem what the Court was doing in that case.

THE COURT: Well, do you have –

THE STATE: So, I don't see –

THE COURT: Yeah, well, let me ask you this. Did you have any witnesses to put on to address any of the –

THE STATE: No, Your Honor.

**THE COURT: Okay. So, how are you –**

**THE STATE: No, Your Honor, but –**

**THE COURT: – demonstrating prejudice?**

THE STATE: **The State will not, Your Honor, so I concede as to the prejudice prong.** So, the first prong, I do think there's an unreasonable delay. **As to the prejudice, I don't – the State bears the, since the laches is an affirmative defense, I'll concede.**

**As to the allegations as they're pled in the pleadings, I don't think the State can establish prejudice** because the only two allegations in the pleadings are that, one, that the defendant was not made aware of the maximum penalty and, therefore, the plea was not voluntary; and, two, the plea was not knowing and voluntary because the Court failed to proper[l]y advise the petitioner of the nature of the elements. **Of course, we had the transcripts, so for those two claims, I don't think there's prejudice at all.** If there's going to be arguments as to what [defense counsel] told her, or what he didn't, I think that's new and that was in the pleading, so that, that may be a different story; but as for the –

THE COURT: I'm sorry, I lost you, [prosecutor]. **So, are you conceding on the issue of laches that you have not demonstrated prejudice?**

13

THE STATE: **Yes, but I will say only as to the claims as they are, as they are pled in [the] pleadings so far.** We heard some testimony, and I heard a preview of an argument that might be made that's –

THE COURT: I didn't follow you.

THE STATE: – not in the –

THE COURT: **I'm sorry. So, as to laches, what are you saying, it's only as to the pleadings? I lost you on what you were saying. Is this – you're conceding that the State has –**

THE STATE**: Of course.**

THE COURT: **– not established any, offered any proof as to actual prejudice, right?**

THE STATE**: Correct, Your Honor.**

(Emphasis added).

At the conclusion of the hearing, the court issued an oral ruling. The court began by making a factual finding, agreeing with Ms. Reyes "that she was not advised precisely what [t]he maximum penalty [was] that she was subjected to." However, relying on this Court's decision in *Coleman v. State*, 219 Md. App. 339 (2014), the court went on to deny Ms. Reyes's petition. The court observed that, as in *Coleman*, Ms. Reyes never sought a direct appeal, and there were many years between her conviction and her coram nobis petition. The court also observed that Ms. Reyes, like Coleman, received a sentence that was less than the maximum she was eligible for. The court concluded by noting that "even if there was error [in] not providing the maximum sentence, the [c]ourt finds [that it] was, in fact, harmless."

Ms. Reyes filed a timely notice of appeal to this Court on November 25, 2020.

14

## DISCUSSION

### A.

### Laches

The State asserts a defense of laches, arguing that we should affirm the circuit court's decision because Ms. Reyes waited too long before bringing her petition. But, in addition to showing an unreasonable delay, a party asserting laches must show prejudice resulting from the delay. *Jones v. State*, 445 Md. 324, 329 (2015); *Fludd v. Kirkwood*, ___ Md. App. ___, No. 1297, September Term 2020, at slip op. 14 (filed Dec. 16, 2021); *Anderson v. Great Bay Solar I, LLC*, 243 Md. App. 557, 610 (2019). Here, the State did not assert any form of prejudice in its answer to the coram nobis petition. Then, during the coram nobis hearing, the State conceded, multiple times on the record, that it suffered no prejudice from the delay. Accordingly, we hold that the State has waived its defense of laches. *See, e.g.*, *Daughton v. Md. Auto. Ins. Fund*, 198 Md. App. 524, 549-50 (2011) (holding that a party was bound by her counsel's concession in the court below).

### B.

### Merits of the Coram Nobis Petition

#### *Parties' contentions*

Ms. Reyes argues that she was misinformed as to the maximum sentence she could be given if she pleaded guilty, and that her guilty plea therefore was not knowing and voluntary, violating Maryland Rule 4-242(c). She argues that because she is now ineligible for citizenship and faces possible deportation as a result of her defective guilty plea, it should be vacated.

15

In support of her argument, she cites to this Court's decisions in *Coleman v. State*, 219 Md. App. 339 (2014); *King v. State*, 71 Md. App. 229 (1987); and *Bryant v. State*, 47 Md. App. 551 (1981). She contends that under *Bryant* and *King*, because she had no plea agreement limiting her maximum sentence, the criminal court was required to advise her of the statutory maximum sentence before accepting her guilty plea. She also distinguishes her case from *Coleman*, contending that although we declined to vacate a guilty plea in that case even though the defendant had not been advised on the record of the maximum possible sentence, our decision turned on the fact that prior to Coleman's sentencing hearing, he had actual notice of the maximum sentence he faced. Because Ms. Reyes had no notice of the maximum sentence during or prior to her hearing—and was actually told the *wrong* maximum sentence—she argues that her case is distinguishable from *Coleman*, and, accordingly, that there is no reason to excuse the errors in her plea process.

The State argues that the circuit court "properly found that any error [in Ms. Reyes's criminal case] did not merit coram nobis relief." In support, it contends that "[Ms.] Reyes's claim that she would have gone to trial is not credible," but it does not present any arguments in support of this position. Additionally, the State contends that "the record shows that the parties knew [Ms.] Reyes's potential sentence was not limited to five years." The State argues that "[c]onsidering [the prosecutor's statement at sentencing that this was a '20-year offense'], the lack of any comment from [Ms.] Reyes or the court following the statement, and that [Ms.] Reyes did not allege any error . . . until seventeen years later, it is improbable that [Ms.] Reyes did not know that possession with intent to distribute carried a twenty-year maximum." Finally, the State contends that because her sentence was lower

16

than the State's recommended sentence, she "received a windfall" and she therefore lacks the extraordinary circumstances required for coram nobis relief.

### *Standard of review*

As a writ of error coram nobis is an extraordinary equitable remedy, appellate courts "review the *coram nobis* court's decision to grant or deny the petition for abuse of discretion." *State v. Rich*, 454 Md. 448, 470-71 (2017) (cleaned up). "However, in determining whether the ultimate disposition of the *coram nobis* court constitutes an abuse of discretion, appellate courts should not disturb the *coram nobis* court's factual findings unless they are clearly erroneous, while legal determinations shall be reviewed de novo." *Id.* at 471 (cleaned up).

### *The nature of coram nobis relief*

The writ of error coram nobis is "[t]raditionally used as a posttrial remedy to correct factual errors affecting the validity and regularity of the judgment." 39 Am. Jur. 2d *Habeas Corpus* § 178 (2021); *accord Ruby v. State*, 353 Md. 100, 104 (1999) ("A writ of error *coram nobis* is a common law tool primarily used to correct factual errors by a court."). In the modern era, the scope of coram nobis has been expanded to include errors of law, not just errors of fact. *Skok v. State*, 361 Md. 52, 78 (2000) ("[A] person should be able to file a motion for coram nobis relief regardless of whether the alleged infirmity in the conviction is considered an error of fact or an error of law."). When those errors lead to serious collateral consequences for the petitioner, "coram nobis provides the trial court with an opportunity to correct its own record to prevent an injustice." 39 Am. Jur. 2d *Habeas Corpus* § 178 (2021); *see also United States v. Morgan*, 346 U.S. 502, 511 (1954)

17

(stating that coram nobis relief is available "only under circumstances compelling such action to achieve justice"). Unlike the writ of habeas corpus, which can be used to relieve petitioners from incarceration imposed as a sentence for a crime, the writ of error coram nobis exists to relieve petitioners of collateral consequences suffered after the completion of their sentences. *Skok*, 361 Md. at 80 .

A petitioner, who was previously convicted of a crime, may obtain coram nobis relief only if:

1.  the petitioner challenges a conviction based on constitutional, jurisdictional, or fundamental grounds, whether factual or legal;

2.  the petitioner rebuts the presumption of regularity that attaches to the criminal case;

3.  the petitioner faces significant collateral consequences from the conviction;

4.  the issue as to the alleged error has not been waived or finally litigated in a prior proceeding, absent intervening changes in the applicable law; and

5.  the petitioner is not entitled to another statutory or common law remedy (for example, the petitioner cannot be incarcerated in a State prison or on parole or probation, as the petitioner likely could then petition for postconviction relief).

*Bodeau v. State*, 248 Md. App. 115, 134 (2020) (quoting *Jones v. State*, 445 Md. 324, 338 (2015)).

### *Collateral consequences*

In the coram nobis proceedings below, the State stipulated that the changes to Ms. Reyes's immigration status constitute significant collateral consequences. The State has therefore waived its argument that Ms. Reyes does not face significant collateral consequences. *See Graves v. State*, 215 Md. App. 339, 353 (2013) ("If the State wants to

18

raise the lack of proof of collateral consequences as a defense to a coram nobis petition . . .

it must raise this issue in the circuit court.").  Although we hold that the issue was waived,

we note that the Court of Appeals has previously recognized changes to immigration status

as constituting significant collateral consequences for the purposes of a coram nobis

petition.[12]  *Skok*, 361 Md. at 56, 77-78, 82; *see also* Md. Rule 4-242(f) (requiring a

defendant to be informed of possible immigration consequences before pleading guilty,

including ineligibility for citizenship and the possibility of detention or deportation).

### *The basis for challenging the conviction*

Ms. Reyes challenges her conviction on the grounds that her guilty plea was

accepted in violation of Maryland Rule 4-242(c).  That rule reads as follows:

> **(c) Plea of Guilty.**  The court may not accept a plea of guilty, including a conditional plea of guilty, until after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, **the court determines and announces on the record that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea**; and (2) there is a factual basis for the plea.  In addition, before accepting the plea, the court shall comply with section (f) of

---

[12] Because the State has waived this issue, we do not analyze its arguments in detail. We will, however, briefly address the State's contention that Ms. Reyes does not face significant collateral consequences because the sentence she was given was lower than that recommended by the State.  This argument misunderstands the nature of the "significant collateral consequences" that a petitioner must demonstrate in a coram nobis petition.  As the name suggests, a collateral consequence is a legal consequence which arises outside of the original proceedings. *See, e.g.*, *Coleman v. State*, 219 Md. App. 339, 347 (2014) (state conviction leading to enhanced "career offender" sentence in subsequent federal case); *Skok*, 361 Md. at 56 (state conviction leading to deportation proceedings).  The sentence received in the original criminal proceeding is, of course, not collateral to that proceeding. Thus, while the sentence received in the underlying criminal case may be relevant when considering the broader equities of the coram nobis petition, it generally is not relevant to the issue of collateral consequences.

19

this Rule.[13]   The court may accept the plea of guilty even though the defendant does not admit guilt.  Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.

(Emphasis added).

In *Bryant v. State*, we held that Rule 731(c),[14] the materially similar predecessor to Rule 4-242(c), required trial courts to inform defendants of the maximum sentence they may receive upon pleading guilty.  47 Md. App. 551, 556-57 (1981).  Bryant pleaded guilty to a charge of escape, but he did not have a plea agreement limiting his possible sentence. *Id.* at 555.  Before accepting his plea, the trial court asked him a series of questions confirming his knowledge of his rights and the voluntariness of his plea, but the court failed to advise him of the maximum sentence he could receive.  *Id.* at 552-55.

On direct appeal, Bryant challenged the validity of his plea, arguing that it was accepted in violation of Maryland Rule 731(c).  *Id.* at 554.  Much like Rule 4-242(c), Rule

---

[13] Rule 4-242(f) requires the court to advise the defendant "that by entering the plea, if the defendant is not a United States citizen, the defendant may face additional consequences of deportation, detention, or ineligibility for citizenship."  As noted in our recitation of facts, Ms. Reyes was asked whether she understood "that if [she was] not a citizen of the United States a finding of guilty in this case could affect [her] status in this country[.]"

[14] Maryland Rule 731(c) stated:

c. Plea of Guilty.

The court may not accept a plea of guilty without first questioning the defendant on the record to determine that the plea is made voluntarily, with understanding of the nature of the charge and the consequences of the plea. The court may accept the plea of guilty even though the defendant does not admit that he is in fact guilty if the court is satisfied that there is a factual basis for the plea.  If the court refuses to accept a plea of guilty, the court shall enter a plea of not guilty.

731(c) required courts to "question[] the defendant on the record to determine that the plea is made voluntarily, with understanding of the nature of the charge and the consequences of the plea." We agreed with Bryant, holding that, as part of the requirement that courts advise defendants on the consequences of their pleas, the courts must advise them of the maximum sentence they could receive. *Id.* at 556-57. We noted that advising defendants of their maximum possible sentence is particularly important "where . . . there [is] no plea agreement with respect to punishment[.]" *Id.* at 555.

In *State v. King*, we considered the application of *Bryant* to the circumstances in which King pleaded guilty to assault with intent to rob pursuant to a plea agreement that limited his sentence to a maximum of four years. 71 Md. App. 229, 231 (1987). The court accepted his plea and sentenced him to four years. *Id.*

On postconviction review,[15] we held that when a plea agreement reduces the maximum sentence a defendant can receive to something below the statutory maximum, *Bryant* does not require the court to recite the statutory maximum sentence to the defendant. *Id.* at 233. We said that

> [t]he statutory maximum penalty is not a magic wand which must be waved over the proceeding in order to validate it. The purpose of informing an accused of the maximum sentence is to assure that defendant understands the sentence he or she could receive. That information is particularly pertinent when either [(1)] the plea is not founded upon a representation that a specific lesser sentence will be imposed or [(2)] the bargained for sentence is at or near the maximum permitted by the statute.
>
> Where, as in the instant case, the bargained sentence is well below the

---

[15] King sought postconviction relief under the former Md. Code art. 27, § 645A. *King*, 71 Md. App. at 231. This provision has since been replaced by Maryland Code (2001, 2018 Repl. Vol.), Criminal Procedure Article ("CP"), §§ 7-101–7-108.

21

statutory maximum and the accused is informed as to the precise sentence he or she will receive, it is not reversible error to fail to advise the accused of the statutory maximum sentence he or she might have received absent the plea bargain.

We think it clear that in the instant case King received that for which he bargained.

* * *

[The trial court's] advising King that he would receive a four year sentence, which sentence is well within the statutory limit, satisfies the "consequences of the plea" requirement of Md. Rule 4-242(c).

*Id.*

In *Coleman v. State*, we were asked to apply *Bryant* and *King* to a case in which the trial court failed to advise the defendant of the maximum sentence he could receive upon pleading guilty, however, there was evidence extrinsic to the plea hearing indicating that the defendant had already been informed of the maximum sentence. 219 Md. App. 339 (2014). Coleman pleaded guilty in 1999 in the Circuit Court for Anne Arundel County to possession with intent to distribute cocaine. *Id.* at 342. Twelve years later, in 2011, he pleaded guilty in federal court to possession with intent to distribute heroin. *Id.* at 347. Believing that his 1999 state conviction subjected him to an enhanced sentence in his 2011 federal case, he filed a coram nobis petition in the circuit court challenging his 1999 guilty plea. *Id.* His petition asserted, among other things, that his plea was not knowing or voluntary because he had not been advised of the maximum sentence that he could face upon pleading guilty. *Id.*

The circuit court denied Coleman's petition, and we affirmed. *Id.* at 358. Looking to the record as a whole, we concluded that he had, in fact, been informed of the maximum

22

sentence for his offense, even though the criminal court never stated any exact numbers in the plea hearing. *Id.* at 350-51, 356-57. First, a report filed after his initial appearance in court certified that he had been informed "of each offense with which he [was] charged and of the allowable penalties, including mandatory penalties, if any." *Id.* at 342 (alteration in original). Second, the information filed against him after his initial appearance "specifically noted that the penalty for possession with intent to distribute was '20yr/$25,000.'" *Id.* Third, the State said during Coleman's plea hearing that if he pleaded guilty, then the State "would be recommending a 'lengthy sentence, the majority of it being suspended with only a small portion to be served[.]'" *Id.* at 343. Fourth, the court then advised Coleman that "the State [was] affirmatively recommending that [he] receive a lengthy jail sentence, mostly suspended[.]'" *Id.* Fifth, Coleman's attorney told the court during the plea hearing that "he had met with Coleman 'on a consistent basis' prior to trial and that, when Coleman was 'picked up on this particular case, . . . he [Coleman] figured he'd get incarcerated for a large period of time—an enormous period of time and for that reason he had just sort of given up the hope of attending college.'" *Id.* at 346 (alterations in original).

Other cases have discussed the effect of a coram nobis petitioner's failure to seek other avenues of relief. In *Holmes v. State*, the Court of Appeals held that, because petitioner failed to make a direct appeal of his conviction, a "rebuttable presumption arose that he waived his right to challenge his conviction through a coram nobis proceeding." 401 Md. 429, 474-75 (2007). But after *Holmes*, and almost certainly in response to it, the General Assembly enacted CP § 8-401. *State v. Smith*, 443 Md. 572, 593 (2015). Section

23

8-401 states that "[t]he failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis," nullifying the holding of *Holmes*. *Smith*, 443 Md. at 593. *Smith* extended this further: in that case, the Court of Appeals considered a petitioner's failure to appeal, failure to seek to withdraw her guilty plea, and failure to seek other post-conviction relief. 443 Md. at 576-78, 595-96. The Court held that none of those facts operated as a waiver of her right to seek coram nobis relief. *Id.*

### *Analysis*

We agree with the circuit court's factual finding that Ms. Reyes was not advised of the maximum sentence she faced before she pleaded guilty. But we disagree with the court's reading of *Coleman* in reaching its determination that the error was harmless.

In the coram nobis proceedings below, both the circuit court and the State interpreted *Coleman* as holding that because Coleman failed to seek a direct appeal, waited many years before filing a coram nobis petition, and received a sentence well below the maximum, the error in failing to inform him of the true maximum sentence was harmless. The circuit court concluded that the same factors are present here, and that they are enough to deny Ms. Reyes's petition. We disagree.

First, the failure to seek a direct appeal has limited relevance to the coram nobis analysis. Since the General Assembly enacted CP § 8-401, it has been the law of our State that a petitioner does not waive her right to coram nobis relief by failing to seek a direct appeal. We conclude that the circuit court was incorrect to consider Ms. Reyes's failure to seek a direct appeal as a factor in its analysis because doing so is incompatible with the

24

public policy expressed by the General Assembly in CP § 8-401.  *See generally Smith*, 443 Md. at 593 (considering the intent behind § 8-401).

Second, we do not think that the amount of time elapsed between Ms. Reyes's conviction and her coram nobis petition was a proper factor for the circuit court to consider in its coram nobis analysis.  Because the State conceded that it suffered no prejudice from Ms. Reyes's delay in bringing her petition, the delay had limited relevance—if any—to a weighing of the equities of this case.[16]

Third, while the State is correct that *Coleman* considered the petitioner's actual sentence as a factor in its decision, it played a relatively small role in our analysis.  The dispositive factor in *Coleman* was that even though the petitioner was not properly informed of the maximum sentence at his plea hearing, he had actual knowledge of the true maximum sentence before he pleaded guilty:

> In short, while Coleman may have had a persuasive argument to make in an application for leave to appeal (which he never filed), **we find no error in the circuit court's decision to deny him the "extraordinary remedy" of coram nobis relief where the "totality of the circumstances," . . . indicates that he was, in fact, aware of the maximum possible penalty that could be imposed upon conviction.**  Moreover, he was sentenced well

---

[16] We could, of course, reach a different conclusion in another case where there was no such concession.  But in general, it is unclear to this Court how much a delay in bringing a coram nobis petition should be considered in the coram nobis analysis beyond its role in the defense of laches.  Because the writ of error coram nobis is designed to allow petitioners to challenge their convictions years after the fact, a delay in filing a coram nobis petition generally matters only to the extent to which it was unreasonable and the extent to which it prejudiced the State.  *Cf. Jones v. State*, 445 Md. 324, 339 (2015) ("The passage of time, alone, does not constitute laches[.]") (citation omitted).  Laches provides a mechanism intended to address those concerns, and it is therefore unclear whether a delay in bringing a petition should be given much weight in the coram nobis analysis absent a meritorious defense of laches.  However, we do not reach a conclusion on this issue because the State conceded that the delay was not prejudicial.

below that maximum. As the First Circuit noted in [*United States v. George*, 676 F.3d 249, 259 (1st Cir. 2012)], "the writ [of error coram nobis] is designed to do justice, not to facilitate a miscarriage of justice."

219 Md. App. at 357 (emphasis added).

Here, we are presented with facts very different from those of *Coleman*. From the outset of Ms. Reyes's criminal case, she was repeatedly told that she faced a maximum sentence that was only one quarter of the actual maximum sentence. The representations of the parties at the sentencing hearing make it clear that this misunderstanding persisted throughout the entire case until after Ms. Reyes pleaded guilty, and the State identifies no evidence in the record to contradict that timeline. This is in no way comparable to Coleman's actual knowledge of the true maximum sentence prior to his plea. *Id.* at 356.

Furthermore, in *Coleman*, we suggested that Mr. Coleman's light sentence counted against him because "the writ [of error coram nobis] is designed to do justice, not to facilitate a miscarriage of justice." *Id.* at 357. In the present case, as compared to *Coleman*, we have no such concern. The two cases are very different: Mr. Coleman knew his maximum sentence before pleading guilty, and he sought coram nobis relief to avoid an enhanced sentence in a subsequent federal case for another offense, *id.* at 347; but Ms. Reyes was misinformed as to both her maximum sentence and the immigration consequences of her plea, and she sought coram nobis relief to avoid deportation and ineligibility for citizenship. Under these circumstances, we do not think that it would be a miscarriage of justice for Ms. Reyes to be able to remain in this country when she has lived here for almost twenty years without incident (on record) after her single conviction.

Our reading of *Coleman* is confirmed by our earlier decision in *King*. There, we

26

held that Rule 4-242 was satisfied despite King not being informed of the statutory maximum sentence, because "the bargained sentence [was] well below the statutory maximum and [King was] informed as to the precise sentence he . . . [would] receive." *State v. King*, 71 Md. App. 229, 233 (1987). Just as in *Coleman*, the critical factor in *King* was not that the defendant received a sentence well below the maximum, but rather that he had *actual knowledge of the maximum sentence he faced*. Because the court accepted a plea agreement in which the State promised that King would be sentenced to no more than four years in prison, it would have been unlawful for the court to sentence him to anything more than that. *Id.* at 231; Md. Rule 4-243(c)(3). In other words, the *statutory* maximum became irrelevant under Rule 4-243 once the court bound itself to a much lower maximum sentence, which King had full knowledge of. *King*, 71 Md. App. at 233.

Here, Ms. Reyes's plea agreement did nothing to guarantee that the maximum sentence she faced was below the statutory maximum. Her agreement only defined what sentences the parties would recommend to the court, and those recommendations are not binding on the court. *State v. Brockman*, 277 Md. 687, 700 (1976). We cannot say that Ms. Reyes, like King, "received that for which [she] bargained," because there was no real bargain to begin with. *King*, 71 Md. App. at 233.

Fourth, we disagree with the State's contentions regarding the prosecutor's comment at the sentencing hearing that this was a "20-year offense," and Ms. Reyes's lack of a recorded response. Rule 4-242(c) is concerned solely with the defendant's knowledge at the time of the plea, and the defendant's knowledge at a subsequent sentencing hearing

27

is irrelevant to that determination.[17]  *State v. Daughtry*, 419 Md. 35, 76 n.25 (2011) ("[D]efense counsel's statement that Daughtry 'understands what he's been charged with' at a sentencing hearing sixteen months after the plea hearing in no way informs the question of what Daughtry understood at the plea hearing itself.").  Here, Ms. Reyes's silence at the sentencing hearing tells us nothing about whether she heard and comprehended the prosecutor's comment.  But even if Ms. Reyes heard and comprehended the prosecutor's comment, her knowledge of the maximum sentence at the sentencing hearing is not probative of her knowledge at the plea hearing two months earlier.  *Id.*

Finally, we are unable to agree with the State's assertion that it is "improbable" that Ms. Reyes did not learn of the maximum sentence before she pleaded guilty.  If the State believed that Ms. Reyes knew the maximum sentence before she pleaded guilty, it could have presented evidence to that effect in the coram nobis court, either by calling witnesses of its own or by eliciting testimony from Ms. Reyes on cross-examination.  But the State did neither.  It called no witness in the coram nobis proceedings, and its cross-examination

---

[17] If the prosecutor's statements and Ms. Reyes's silence at the sentencing hearing were probative of the knowledge she had prior to her plea, then we could certainly consider them even though they were made after the plea.  The Court of Appeals held as much in *Smith*:

> [W]e hold that a lawyer's testimony at a coram nobis hearing concerning having advised a defendant prior to the guilty plea of the nature of the charges against him or her is admissible.  Such testimony may be considered in a coram nobis proceeding in determining whether a defendant pled "voluntarily, with understanding of the nature of the charge" within the meaning of Maryland Rule 4-242(c).

443 Md. at 653.

of Ms. Reyes related solely to her understanding of the elements of the offense, not the maximum sentence or when she learned of it. Without any evidence to support it, the State's assertion is only speculation.

## *Conclusions*

We hold that Ms. Reyes's guilty plea was not made knowingly and voluntarily, making her conviction invalid based on constitutional or fundamental grounds. *Graves v. State*, 215 Md. App. 339, 354, 359 (2013). By showing that the parties were misinformed as to the maximum sentence, she has rebutted the presumption of regularity that attached to her criminal case.

Our holding requires us to vacate the judgment of the circuit court for two reasons. First, the circuit court's opinion indicates that the court viewed Ms. Reyes's failure to seek a direct appeal as a waiver of her right to coram nobis relief. To the extent that the circuit court relied on this as a reason to deny Ms. Reyes's petition, the court erred as a matter of law, because the failure to seek a direct appeal does not constitute a waiver of coram nobis relief. CP § 8-401. Second, the circuit court misinterpreted *Coleman* as adopting a broad harmless error analysis for violations of Rule 4-242. To the contrary, *Coleman* held that if a defendant is already aware of the maximum sentence for an offense, then—at least for the purposes of coram nobis proceedings—Rule 4-242 is satisfied even if the maximum sentence is not restated on the record in a plea hearing.

The circuit court's reliance on *Coleman* would be more appropriate if Ms. Reyes, like Coleman, had known the true maximum sentence she faced prior to her plea, or perhaps if the record was silent on her knowledge prior to the plea. By contrast, Ms. Reyes was not

29

only in the dark about the consequences of her plea—which would violate Rule 4-242(c) on its own—but also was affirmatively misinformed about the consequences of her plea throughout all the proceedings leading up to and including her plea hearing.  In sum, she was denied the opportunity to make an informed choice of whether to plead guilty or go to trial.[18]

Accordingly, on remand, the question before the circuit court is whether Ms. Reyes's conviction, as the product of an unlawful guilty plea, should remain on her record and continue subjecting her to collateral consequences.  *United States v. Bush*, 888 F.2d 1145, 1149 (7th Cir. 1989); 39 Am. Jur. 2d *Habeas Corpus* § 178 (2021) ("[C]oram nobis provides the trial court with an opportunity to correct its own record to prevent an injustice.") (emphasis added).  We observe that Ms. Reyes's conviction makes her deportable and ineligible for citizenship, which certainly constitutes significant collateral

---

[18] In *Brady v. United States*, the Supreme Court discussed the importance of ensuring that a guilty plea is the product of an informed, voluntary decision:

> That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized.  Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment.  He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so—hence the minimum requirement that his plea be the voluntary expression of his own choice.  But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge.  Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.

397 U.S. 742, 748 (1970) (footnotes omitted).

consequences.  Ms. Reyes is also not entitled to any other statutory or common law remedy:

it is too late for her to make a direct appeal, and her sentence has been completed, making

her ineligible for postconviction relief.

Accordingly, we hold that Ms. Reyes's plea was not knowing and voluntary, and

that the circuit court abused its discretion in denying her petition for writ of error coram

nobis.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY DENYING PETITION FOR WRIT OF ERROR CORAM NOBIS VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY MONTGOMERY COUNTY.**

31